## ROBERT HEILMAN v. I. M. OLSEN.[1]

May 23, 1913.

Nos. 18,229—(279).

**Rotation of names on ballot.**

1. Section 180, R. L. 1905, does not require a rotation on the general election ballot of the names of the two candidates for one office chosen at the primary election under chapter 2, Laws 1912.

**Same — primary election.**

2. The court cannot read into the primary election law of 1912, Laws 1912, c. 2, a requirement that a rotation on the general election ballot be

[1] Reported in 141 N. W. 791.

made of the names of the two candidates for one office chosen at the primary; and the failure to make a rotation is not so violative of the purpose and intent of the primary law as to invalidate an election at which there is no rotation.

Robert Heilman, a legal voter of Lyon county, appealed to the district court for that county from the decision of the state canvassing board declaring that I. M. Olsen had received the highest number of votes cast for judge of the Ninth judicial district at the November, 1912, election, and that by reason thereof he was duly elected judge of that district. The matter of the appeal was transferred to Brown county and was heard before Qvale, J., acting for the judge of that judicial district, who made findings and as conclusion of law ordered judgment in favor of the contestee, and confirming the action of the state canvassing board declaring him elected to that office. From the judgment entered pursuant to the order, contestant appealed. Affirmed.

*Tom Davis* and *Ernest A. Michel, L. P. Johnson* and *Gislason & Gislason,* for appellant.

*Virgil B. Seward, George T. Olsen* and *Henry M. Somsen,* for respondent.

DIBELL, C.

This is an appeal by the contestant, a legal voter of Lyon county, from the judgment of the district court of Brown county adjudging I. M. Olsen, the contestee, elected judge of the district court of the Ninth judicial district.

At the November, 1912, general election I. M. Olsen and M. E. Mathews were rival candidates, nominated at the nonpartisan primary, for the office of judge of the district court of the Ninth judicial district, which comprised the counties of Lyon, Redwood, Brown, Nicollet and Lincoln. Upon a recount of the votes cast it was found that Judge Olsen had 6,466 votes and Mr. Mathews 6,386 votes, giving Judge Olsen a majority of 80.

The county auditors in the counties of Lyon, Redwood, Nicollet and Lincoln rotated the names of the two candidates upon the ballots. In the county of Brown, where the total vote was about one-

fourth of that of the whole district, the names were not rotated on the ballot, the auditor giving Judge Olsen the preferential place at the head of the office division. The only question presented is the clear-cut legal one whether the failure to rotate the names in Brown county invalidated the election.

Counsel for the contestant claims that the general election law requires such rotation; and, even if it does not, that the effect of the primary law of 1912 is such as to require a holding that a rotation at the general election was intended, though not expressed, and that a failure to rotate is so violative of its purpose and intent as to invalidate an election when there is no rotation.

1. Section 340, R. L. 1905, states the result which follows the use of ballots containing errors or mistakes likely to affect the result, and is as follows:

"Whenever in any contested election the tribunal hearing the contest shall determine that the ballots used in any district, by reason of the omission, addition, misplacing, misspelling, or misstatement of one or more titles of offices, names of candidates, or parties or policies represented by them, were so defective as to the office in contest as to be calculated to mislead the voters in regard to any of the candidates for said office and that the defective condition of said ballots may have affected the result of the entire election for such office, the election shall be declared invalid as to said office."

Section 180, R. L. 1905, provides for the rotation of names, in certain cases, in the following language:

"Whenever two or more persons are to be elected to the same office, the names of all candidates of the several political parties for such office shall be so alternated on the ballots used in each election district that they shall appear thereon substantially an equal number of times at the top, at the bottom, and in each intermediate place, if any, of the list or group in which they belong. All officers charged with the preparation and distribution of such ballots shall cause the printer's forms to be so transposed and the blocks of ballots to be so made up as to carry out the intent hereof: provided, that nothing in this section shall apply to the office of presidential elector."

Section 180 is abbreviated from section 3 of chapter 88, Laws
121 M.—30.

1901, which is the first statute providing for a rotation at a general election. This section, expressly repealed by the revision, referred to cases "where more than one candidate is to be voted for for the same office," and otherwise, so far as here important, was as is the revision.

Counsel for the contestant claim that, in view of the language of the act of 1901, it should be held that there must be a rotation when there are two candidates for one office. We think they are mistaken in their construction.

It matters not whether we take the language of the act of 1901 or that of the revision. The meaning is the same. The words, "where more than one candidate is to be voted for for the same office," clearly enough refer to cases where the voter may vote for more than one candidate, and not to cases where he can vote for one only, making his choice from two or more; and these words are the equivalent of the phrase in the revision, "whenever two or more persons are to be elected to the same office." That section 180 refers only to cases where more than one candidate may be elected is shown to the point of demonstration upon a casual consideration of the election law. There was never a rotation of the names of opposing candidates, except where there was more than one office to be filled within an office division; and then the rotation was between the competing candidates of a party. There was never a rotation in a "vote for one" office division. There was a rotation in a "vote for two" office division, and in every office division from which two or more candidates were to be elected. Provision was made for no other rotation; no other method of rotation could be used. There was never a rotation between opposing party candidates. There was never a rotation of party position.

The reasons which make desirable a rotation when two or more are to be elected from one office division, a situation for which the 1901 statute provided, are present when the two highest candidates on the nonpartisan primary ballot are put on the general election ballot as competitors for one office, both designated on the election ballot, "nominated at primary election non-partisan," but such situation could not arise when the general election law was enacted, for there

was then no case where two candidates, designated in the same way on the ballot, were competing candidates for one office, and the situation made by the primary law was never in contemplation.

It is necessarily held that section 180 does not require a rotation when but one of the two candidates is to be elected.

2. The further contention of the contestant is that the purpose and intent of the primary law is violated unless there is a rotation; and that it should be held that a rotation is required and that an election without it is invalid.

The primary election law of 1912, amending certain sections of R. L. 1905, relative to primary elections, provides for a "nonpartisan primary ballot" for judges of the various courts, county superintendents of schools, and all municipal officers in cities of the first class, the two candidates receiving the highest number of votes for a single office being the opposing candidates at the ensuing general election. Laws 1912, p. 4, c. 2. Sections 2 and 5 of this chapter, amendatory of sections 182 and 187, R. L. 1905, relating to primary elections, provide for a rotation of names, where there are two candidates though but one office. A rotation of names, though there was but one office for which nominations were to be made, was a feature of Laws 1899, p. 447, c. 349, our first primary law, as of all our primary laws, and quite likely suggested the rotation on the general election ballot for which provision was made by the act of 1901 in cases where more than one was to be elected, which were the only cases to which a rotation could apply.

The failure to provide for a rotation at the general election, to correspond with the rotation at the primary, was likely the result of an oversight. The necessity of amending the general election law to secure a rotation in a "vote for one" office division was not in mind. The situation presented is, in principle, the same as was presented prior to the statute of 1901, when there were two or more offices within an office division to be filled, and a number of competing candidates. The arrangement of names, within the party group, was left with the officers making up the ballots. Sometimes resort was had to the casting of lots, sometimes preference was given to the one first filing, sometimes the preference was alphabetical, and sometimes

favor fixed position. It would have been proper to rotate the names in Brown county, indeed it was quite the thing to do. The auditors of the other four counties of the district did rotate. The secretary of state, in a precisely similar situation, alternated names on the state ballot. The fairness of distributing the advantage of position by an alternation of names, so common now that it is hardly thought of as having been otherwise, is all that makes the contention which we have been here considering plausible.

It cannot be held that the legislature omitted to provide for an altogether desirable rotation and that now the court should supply the omission. Neither can the court say that the failure to rotate, with no statute requiring it, is so violative of the intent and purpose of the primary law as to invalidate the election. The fact that the auditor of Brown county, by his arrangement of the ballot, intended an advantage to the contestee, does not invalidate the election, if the arrangement was one which legally he might make.

It is not claimed that Judge Olsen was a party to the action of the county auditor of Brown, or that he knew of it.

We have given thorough consideration to the two general propositions urged by the contestant. Counsel agree that these two propositions involve the substance of the controversy and that a decision upon them determines the case.

Judgment affirmed.