STATE OF MISSOURI at the relation of FRANK F. CATRON, Petitioner, v. DWIGHT H. BROWN, Secretary of State, Respondent.—No. 38529. —171 S. W. (2d) 696.

Court en Banc, March 24, 1943.

*Frank F. Catron* for relator.

*Roy McKittrick,* Attorney General, *Harry H. Kay* and *John S. Phillips,* Assistant Attorneys General, for respondent.

ELLISON, C. J.—Original proceeding in mandamus. The relator has been duly nominated as a candidate for delegate-at-large in the State Constitutional Convention to be convened this year in obedience to a vote of the electors of the State, as taken under Secs. 3 and 4, Art. XV of the present Constitution at the general election held last November. In conformity with said Sec. 3 the Governor has called a special election to be held on April 6 for the election of the delegates-at-large and district delegates to the Convention; and the respondent Secretary of State has certified to the county clerks of the several counties the names of the persons who have been nominated for those offices, for publication on the official ballot. Relator contends respondent has arbitrarily and abusively exercised his official discretion in the order or sequence in which he has certified the names of nominees for delegate-at-large, who are to be voted upon statewide. Respondent answers that he has followed precedent and his own best judgment. The sole question for decision is whether

under the facts we should hold as a matter of law that respondent has acted arbitrarily and abusively. Relator concedes that neither he nor this court can dictate the particular form in which the certification should be made.

The constitutional and statutory provisions defining the respondent Secretary of State's duties in this regard are exceedingly fragmentary. Sec. 3, Art. XV of the Constitution merely provides, that the election of delegates shall be "conducted as provided by law;" and that "not less than fifteen days before the election, the secretary of state shall certify to the county clerk of (each) county . . . the names of all persons nominated for delegates-at-large." Sec. 11683, R. S. 1929, Mo. R. S. A., sec. 11683, provides that "whenever an election shall be called to elect delegates to a constitutional convention . . . said election shall be conducted in the manner provided by law for general elections." And Sec. 11595, R. S. 1939, Mo. R. S. A., sec. 11595 of the general election law requires that the names of candidates shall be published on the official ballot in the order certified by the secretary of state; and makes a violation of that requirement a misdemeanor. Thereby it results that the sequence in which the names of delegates-at-large are certified by the secretary of state must be followed on the ballots in every county; but there is no statutory or constitutional provision specifying in what order *he* shall certify the names.

Sec. 3, Art. XV, provides fifteen delegates-at-large shall be elected. Thirty-four persons have been duly nominated. In this State the statutes provide for central committees for political parties, which represent and act for the party in the interim between its conventions. Sec. 11539, Laws Mo. 1941, p. 365; Sec. 11538, Laws Mo. 1941, p. 354; Secs. 11577, 11578, R. S. 1939, Mo. R. S. A., secs. 11577, 11578. The Republican and Democratic parties are the largest. In the last general election for governor held in November, 1940, each cast slightly more than 900,000 votes. In that election two other parties nominated candidates. The Socialist party nominee received a little over 1500 votes and the Socialist-Labor nominee slightly more than 200 votes. During the present month the Republican and Democratic state central committees met and jointly agreed upon or endorsed fifteen candidates for nomination as delegates-at-large to the Constitutional Convention, of whom eight were Democrats and seven Republicans. The secretary of state in certifying the list of thirty-four nominees for delegates-at-large placed these fifteen nominees at the head of the list. The names of the remaining nineteen candidates followed in the order of the filing dates of their nominating petitions, but were listed alternately according to party affiliation so far as known. The relator's name was the twenty-eighth.

The relator asserts that delegates whose names are at the top of the ballot will have almost a conclusive advantage in the election because

a large percentage of the electors vote only for candidates whose names are in that position. He contends that in practical effect the respondent's certification of the names constitutes rank discrimination against the nominees whose names are in the lower part of the list, and particularly against him whose name is the 28th in the list of 34. And he further maintains that the certification as thus made violates the spirit of Sec. 3, Art. XV of the Constitution in this. The section provides that in order to secure representation from different political parties in each senatorial district, the party committee of each district shall nominate only one candidate for district delegate in such manner as the committee may prescribe; and that two nominees shall be voted for, each on a separate ballot, *with* the party emblem or designation thereon. And the two candidates receiving the highest number of votes shall both be elected.

But when it comes to delegates-at-large the section provides that all nominees therefor (italics ours) "shall be voted for upon one independent and separate ballot *without* any emblem or party designation whatever, and the fifteen candidates for delegates-at-large receiving the highest number of votes shall be elected." In other words, relator reasons that since the names of the delegates-at-large are required to be placed upon a single ballot without emblem or party designation, the section impliedly forbids the placing of the names of candidates who are sponsored by a political party in a more favorable position on the ballot.

And as evidencing the fact that such position is more advantageous, he points to Sec. 11560, R. S. 1939, Mo. R. S. A., sec. 11560, which requires that the names of candidates for each office in a primary (nominating) election, shall be *alternated* on the ballots used in each election precinct so that each name shall appear thereon substantially an equal number of times at the top, at the bottom, and in each intermediate place. In this same connection relator cites statutes from Minnesota, New York, Kansas, Nebraska, Ohio, California, Illinois, Pennsylvania and New Jersey which require the names of candidates in nominating elections to be rotated on the ballot or else that they draw by lot for position. In California if an *incumbent* is a candidate for re-election he gets first position. Where there is more than one incumbent that position is determined alphabetically and also by the number of the districts from which they run. In several of these states, as in Missouri, in general elections, the party which cast the highest vote for governor at the last preceding election gets first place. In one state the political parties draw lots for positions on the general election ballot.

On the other side respondent points to the fact that Sec. 3, Art. XV expressly states its purpose, as regards district delegates, to *secure* representation from different political parties in each senatorial district, and they run with party designation; also the con-

cluding part of the section provides that in case of a vacancy by death, resignation or other cause, of *any* elected delegate the governor shall fill the same by appointment of another delegate from the *same* political party. In addition to that it is admitted that in the election of delegates to the Constitutional Convention of 1922-3 the same method was followed as in this instance. In fact in that case the joint action of the party State Committees was taken in the beginning and very few persons other than those thus agreed upon became candidates for delegates-at-large.

Likewise, he points out, as we have already noticed, that Sec. 11595, supra, applicable to general elections (and it is to be remembered Sec. 11683 provides these delegate elections shall be conducted in the same manner as general elections), provides that "each list of candidates shall be placed on the ballot in the order of the voting strength of the respective parties as determined by the vote for governor at the last preceding general election," the party receiving the highest number of votes to be placed in the first or left-hand column; and if candidates were nominated by petition (and not as party candidates) they are to be placed in the least favorable position on the right side of the ballot. So also Sec. 11501, R. S. 1939, Mo. R. S. A., sec. 11501, provides that the judges of election shall be taken from the two political parties that poll the largest number of votes at the last preceding general election.

Again, Sec. 16, Art. XIV, the Constitutional Amendment recently adopted (November, 1936) providing for a State Conservation Commission provides that the Commission shall consist of four members, not more than two of whom shall be members of the same political party. So, also, the successive legislative Acts of the General Assembly, the last one reported being Laws Mo. 1939, p. 321, and another known as Senate Bill No. 2, recently passed with an emergency clause, providing for the appointment of six commissioners on this court, have always provided "that not more than three of said commissioners shall at any time belong to the same political party." These latter two illustrations are cited only by way of analogy, to show that even in non-political bodies party alignment has been considered by our General Assembly.

Furthermore, it seems to us, a distinction is to be drawn between primary elections where candidates aspire to nomination for an office, and the election of delegates to a Constitutional Convention after they have been nominated by the people as the law provides. Sec. 3, Art. XV of the Constitution provides the district delegates shall be nominated in such manner as the party committees of the several senatorial districts may severally prescribe. Delegates-at-large are nominated by petition, and need obtain only five per centum of the vote cast for Governor at the last preceding general election in the district. Their selection is a matter of public concern.

When a candidate runs for a nomination to a public office with emoluments (as is usual) a consideration of his *personal* rights in some measure at least dictates the statutory provision that the names of candidates for nomination be rotated on the primary election ballot. But even so it had never been thought in this State, so ▉▉▉ far as we are aware, until the·Legislature so enacted, that all such candidates had an inherent right to an equal position on the ballot. Under the statutes cited by relator in other states various methods are used in determining the position of candidates on the primary ballot, as by lot, or alphabetically, or in the order of districts, or in one state where the candidate is an incumbent running for re-election. But what possible benefit to the *public* can there be in assigning positions on the ballot by lot or the alphabet? Would not that practice some times put the least qualified candidate in the most advantageous place? The most that can be said for it is that it would prevent favoritism, which might lead to political corruption.

But in this case the two-party state committees representing 1,800,-000 voters, 99.9% of the total electorate at the last general election for governor, have joined in endorsing the fifteen delegates-at-large at the top of the certified list—as was done without hint of criticism twenty years ago before the last Constitutional Convention. It can hardly be said that practice, as a long range rule, would lead to political corruption. The general rule is that the matter is controlled by statute. 20 C. J., sec. 167, p. 143, sec. 173, p. 147; 29 C. J. S., sec. 158, p. 230; 18 Am. Jur., sec. 166, p. 290. If no provision is made by statute the matter is left to the discretion of the supervising official. It is said that·"his decision will not be disturbed unless he acts fraudulently or unfairly or upon a basis that is clearly improper and prejudicial." 18 Am. Jur., supra; Westover v. Clark (1922), 35 Ohio Circuit Decisions, 783, 789.

Another case, Heilman v. Olsen, 121 Minn. 463, 141 N. W. 791, 792, decided in 1913, held the provisions of the Minnesota primary law requiring the rotation on the ballot of the names of candidates for nomination, could not be applied to general elections. The Minnesota Supreme Court went so far as to say that even if the supervising officer by his arrangement of the ballot *intended* an advantage to one of the candidates, it did not invalidate the election, if the arrangement was one which he legally might make. There is a recent Michigan case, Elliott v. Secretary of State, 295 Mich. 244, 250, 294 N. W. 171, 173(4), which held that in the non-partisan election of supreme judges in that state, it was the duty of the secretary of state to rotate the names of candidates on the ballot even in the absence of specific constitutional or statutory provision so requiring. In this case Sec. 3, Art. XV, of our Constitution so far as it says anything, makes a requirement to the contrary. It says the election of delegates shall be conducted as provided by law. And Sec. 11683, supra, making

such provision, says such elections shall be conducted as provided by the *general* election laws.  At least it can be said the facts do not show an arbitrary or abusive exercise of discretion by the respondent secretary of state.  We put our decision on that ground.

For the reasons stated a peremptory writ of mandamus is denied. All concur.