## ELLIOTT *v.* SECRETARY OF STATE.

1. ELECTIONS—DUTIES OF SECRETARY OF STATE—COUNTY BOARDS OF ELECTION COMMISSIONERS.

    Under the general election law it is the duty of the secretary of State to prepare rules, regulations and instructions for the conduct of elections and to advise local election officials as to the proper method of conducting elections and it is the duty of county boards of election commissioners to prepare ballots for an election in their respective counties in accordance with such rules and instructions from the secretary of State (1 Comp. Laws 1929, § 3065, Act No. 351, pt. 1, chap. 2, § 1, Pub. Acts 1925, as added by Act No. 200, Pub. Acts 1931).

2. SAME—NONPARTISAN ELECTION OF JUDICIAL OFFICERS—CONSTITUTIONAL LAW.

    The adoption of the constitutional amendment changing the election of judicial officers from one on a partisan basis to a nonpartisan basis was prompted by the desire to make more effective the provision of the Constitution that laws should be passed to preserve the purity of elections and guard against abuses of the elective franchise and everything reasonably necessary to be done by election officials to accomplish the purpose of the amendment is fairly within its purview (Const. 1908, art. 3, § 8; art. 7, § 23).

3. EVIDENCE—JUDICIAL NOTICE—NAMES AT HEAD OF LIST OF CANDIDATES FOR PUBLIC OFFICE.

    It is a commonly known and accepted fact that in an election, either primary or general, where a number of candidates or nominees for the same office are before the electorate, those whose names appear at the head of the list have a distinct advantage.

4. ELECTIONS—PREPARATION OF BALLOTS—ABUSE OF ELECTIVE FRANCHISE.

    Even in the absence of a specific constitutional or statutory provision it is the clear duty of election officials, when rea-

(245)

sonably possible, to prepare ballots in such a manner as will most effectively comply with the constitutional mandate as to the preservation of the purity of elections and guard against abuse or misuse of the elective franchise; hence such officials must not prepare ballots in such a way as will afford one candidate or nominee an unfair advantage over rival candidates or nominees (Const. 1908, art. 3, § 8).

5. SAME—NONPARTISAN BALLOTS—JUSTICES OF THE SUPREME COURT —ROTATION OF NAMES.

Under constitutional amendment providing that election of judicial officers shall be on a nonpartisan basis it is the duty of the election officials to rotate the names of candidates for the office of Justice of the Supreme Court on the nonpartisan ballots at a general election (Const. 1908, art. 3, § 8; art. 7, § 23).

6. COSTS—MANDAMUS—ROTATION OF NAMES ON NONPARTISAN BALLOTS FOR JUSTICES OF THE SUPREME COURT.

No costs are awarded in mandamus proceeding to compel rotation of names of candidates for office of Justice of the Supreme Court on nonpartisan ballots at a general election, the question submitted being a public one (Const. 1908, art. 7, § 23).

Mandamus by Philip Elliott to compel Harry F. Kelly and others to rotate the names of candidates for the office of Justice of the Supreme Court on the nonpartisan judicial ballot at the general election of November 5, 1940. Submitted October 8, 1940. (Calendar No. 41,377½.) Writ granted October 9, 1940.

*Neithercut & Neithercut, McTaggart & Krapohl, Cook & Stipes, John H. Farley, Richard C. Fruit,* and *Lewis Kearns,* for petitioner.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd,* Assistant Attorney General, for defendants.

PER CURIAM. This is a petition for mandamus to direct the defendants to perform alleged duties as

election officials.   Plaintiff has been legally nomi-
nated as a candidate for the office of Justice of the
Supreme Court to which office one of several nomi-
nees is to be elected at the ensuing November elec-
tion.   Under the constitutional amendment adopted
in April, 1939, the names of the several nominees for
the office of Justice of the Supreme Court will be
printed on a "separate judicial ballot containing no
party designation."   The pertinent portions of the
constitutional amendment are printed in the margin
hereof.*   Plaintiff asserts that by reason of the con-
stitutional amendment, which changes the election
of judicial officers from one by use of partisan bal-
lots to a nonpartisan election, fairness and preserva-

* "All primary elections and elections of justices of the supreme
court, judges of the circuit court, judges of probate courts and all
county judicial officers provided for by the legislature under section
21 of article 7 of the constitution shall be nonpartisan and shall
be conducted hereunder.   For the purposes of this section, all elec-
tions at which candidates for said judicial offices are nominated
are designated 'primary elections.'   Nominations for justices of
the supreme court shall be made as now or hereafter provided by law;
nominations for all other said judicial offices shall be made at non-
partisan primary elections.   This section is declared to be self-
executing.   Except as in the constitution otherwise provided, all
primary election and election laws, including laws pertaining to
partisan primaries and elections, shall, so far as applicable, govern
primary elections and elections hereunder. * * *

"One separate judicial ballot containing no party designation shall
be used for primary elections and elections hereunder.   Such ballots
shall contain the names of the candidates certified, or the nominees
nominated, as provided herein.   There shall be printed upon the
ballot under the name of each incumbent judicial officer, who is a
candidate for nomination or election to the same office, the designa-
tion of that office.   At any such primary election no voter shall vote for
more candidates for any office than the number to be elected thereto.
The candidates receiving the largest number of votes at any such
primary election, to a number equal to twice the number of places to
be filled, shall be nominated."   Const. 1908, art. 7, § 23 as added
April, 1939.

tion of purity in elections require rotation of the names of nominees in the manner provided for rotation of the names of candidates in the primary election law. 1 Comp. Laws 1929, § 2895 (Stat. Ann. § 6.153). And petitioner in part in support of his contention relies upon the provision in the constitutional amendment which reads:

"Except as in the Constitution otherwise provided, all primary election and election laws, including laws pertaining to partisan primaries and elections, shall, so far as applicable, govern primary elections and elections hereunder."

In the brief filed in opposition to plaintiff's petition it is asserted that the above-quoted provision of the constitutional amendment provides that so far as applicable the statutory provisions pertinent to primary elections shall continue to be applied to primary elections only; and that statutory provisions applicable to general elections shall be applied to such elections only. In other words, notwithstanding the quoted constitutional amendment, the assertion is that there is no authority for applying provisions in the primary election law to the conduct of general elections. For this reason it is stated in the brief that there is no provision in the statute requiring election officials to rotate plaintiff's name with that of other nominees on the nonpartisan ballot to be prepared incident to the election of a Justice of the Supreme Court.

Plaintiff's petition is not opposed by any rival nominee for the office in question, and the attitude of the defendants in this case instead of being one of definite opposition to plaintiff's petition is rather that of seeking the direction of this Court as to the proper course to pursue in the discharge of their duties as election officials.

Under the statute it is the duty of the secretary of State to prepare rules, regulations and instructions for the conduct of elections, and to advise local election officials as to the proper method of conducting elections. Act No. 351, pt. 1, chap. 2, § 1, Pub. Acts 1925, as added by Act No. 200, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 2755-1, Stat. Ann. § 6.10). And it is the duty of county boards of election commissioners to prepare the ballots for an election in their respective counties in accordance with such rules and instructions from the secretary of State. 1 Comp. Laws 1929, § 3065 (Stat. Ann. § 6.352).

In determining the issue presented in the instant case it is of first importance to be mindful that the Constitution provides:

"Laws shall be passed to preserve the purity of elections and guard against abuses of the elective franchise." Const. of 1908, art. 3, § 8.

It cannot be doubted that the adoption of the recent constitutional amendment, which changed the election of judicial officers from one on a partisan basis to one that is nonpartisan was prompted by the desire to make more effective the last above quoted constitutional provision. Therefore, everything reasonably necessary to be done by election officials to accomplish the purpose of the amendment is fairly within its purview. It is a commonly known and accepted fact that in an election, either primary or general, where a number of candidates or nominees for the same office are before the electorate, those whose names appear at the head of the list have a distinct advantage. *Groesbeck* v. *Board of State Canvassers,* 251 Mich. 286. It is not consistent with fairness or purity of elections or the avoidance of misuse of elective franchise for elec-

tion officials to prepare ballots in such a condition as will afford one candidate or nominee an unfair advantage over rival candidates or nominees. Hence we think the conclusion is justified that, even in the absence of specific constitutional or statutory provision, it is the clear duty of election officials, when reasonably possible, to prepare ballots in such a manner as will most effectively comply with the constitutional mandate touching the preservation of the purity of elections and guarding against abuse or misuse of the elective franchise.

We are of the opinion that it is clearly the duty of the defendants in this case, acting as election officials, to rotate on the nonpartisan ballots the names of candidates for the office of Justice of the Supreme Court at the general election to be held November 5, 1940. In event of refusal by the defendants or either of them a writ of mandamus will issue accordingly upon plaintiff's *ex parte* application. The question submitted being one of public concern, no costs will be awarded.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, MCALLISTER, WIEST, and BUTZEL, JJ., concurred. BOYLES, J., did not sit.