SULLIVAN *v.* SECRETARY OF STATE.

1. ELECTIONS—CANDIDATES WITH SIMILAR SURNAMES—IDENTIFICATION.

Provision of election code authorizing board of election commissioners to print the occupation or residence of each candidate for the same public office having the same or similar surnames has the legislative purpose of providing a means for identifying to the electorate candidates for public office (CLS 1961, § 168.561).

2. SAME—STATUTES—IDENTIFICATION OF CANDIDATES WITH SIMILAR SURNAMES.

The legislature's power to enact legislation regulating the time, place, and manner of all nominations and elections to public office, to preserve the purity of elections and secrecy of the ballot, and to guard against abuses of the elective franchise includes the power to provide a means of identifying to the electorate candidates for the same public office with the same or similar surnames (Const 1963, art 2, § 4; CLS 1961, § 168.561).

3. SAME—PROSECUTING ATTORNEY—CANDIDATES WITH SIMILAR SURNAMES—IDENTIFICATION—FORMER OCCUPATION.

Designation as *former assistant attorney general* on primary ballot in which plaintiff and another attorney with the same surname were seeking nomination for office of county prosecuting attorney *held*, to constitute an effective designation of plaintiff so as to identify him to electorate as authorized by statute although the statute was silent as to use of a former occupation for such purpose, the statutory alternatives of occupation or residence being insufficient in populous county (CLS 1961, § 168.561).

---

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 18 Am Jur, Election § 177 (Supp).
[4] 14 Am Jur, Costs § 91.

4. COSTS—PUBLIC QUESTION—IDENTIFICATION OF CANDIDATES WITH SIMILAR SURNAMES.

  No costs are allowed in mandamus proceeding to compel adoption of identifying terminology, where plaintiff and another person with identical surnames were seeking nomination to the office of prosecuting attorney in a populous county, a question of public concern having been involved (CLS 1961, § 168.561).

ADAMS, J., dissenting.

Petition by Joe B. Sullivan against James M. Hare, Secretary of State, the Wayne County Election Commission, and its individual members for writ of superintending control in the nature of mandamus to compel identifying office-holding designation on primary election ballot. Submitted July 29, 1964. (Calendar No. 32, Docket No. 50,909.) Writ ordered to issue July 30, 1964. Opinions filed October 6, 1964.

*Maurice Kelman, Oliver C. Nelson,* and *Sheldon Otis,* for plaintiff.

*Frank J. Kelley,* Attorney General, and *Robert A. Derengoski,* Solicitor General, for defendant Secretary of State.

*Samuel H. Olsen,* Prosecuting Attorney, *Aloysius J. Suchy* and *David E. Flayer,* Assistant Prosecuting Attorneys, for defendants Wayne County Election Commission and its individual members.

SOURIS, J. On July 30, 1964, over Mr. Justice ADAMS' dissent, this Court issued its order of superintending control in the nature of a writ of mandamus, GCR 1963, 711, requiring the defendant Wayne county election commission to provide by its order a ballot designation as "former assistant attorney general" for plaintiff, Joe B. Sullivan, a candidate for partisan nomination to the office of

prosecuting attorney for the county of Wayne in the then impending primary election.

The defendant board first had granted plaintiff's request for a ballot designation as "assistant attorney general", but then on complaint of other candidates for the same nomination sought by plaintiff, including John L. Sullivan, the candidate whose same surname entitled plaintiff to a ballot designation pursuant to the provisions of section 561 of the Michigan election law (CLS 1961, § 168.561 [Stat Ann 1956 Rev § 6.1561]), the board rescinded its previous action and, instead, granted both candidates named Sullivan ballot designations of their respective residence addresses. It was this latter action plaintiff sought to have reviewed here by petition for our order of superintending control in the nature of mandamus.

The cited statute reads as follows:

"The said ballots so prepared by the board of election commissioners in each county for use by the electors of any political party at said primary election shall include the names of all candidates of said political party for the office of governor, lieutenant governor and United States senator, the names of all candidates of said political party for district offices, and, in each county, the names of all candidates of said political party for county offices: Provided, That if 2 or more candidates for the same office have the same or similar surnames, the board of election commissioners, upon the request of any such candidate filed in writing not later than 3 days after the last day for filing nominating petitions, shall print the occupation or residence of each of such candidates having the same or similar surnames on the ballot or ballot labels under their respective names. The term 'occupation' shall be construed to include political office, even though it is not the candidate's principal occupation.

"The name of any candidate shall be printed showing the given name or abbreviation or initials of the given name of the candidate, and, in the case of a married woman, shall not be printed showing the husband's given name."

Section 561, just quoted, has for its legislative purpose provision of a means for identifying to the electorate candidates for public office with the same or similar surnames. The source of the legislature's power to enact such legislation was formerly in article 3, § 8, of the Constitution of 1908, which read, in pertinent part:

"Laws shall be passed to preserve the purity of elections and guard against abuses of the elective franchise."

The currently applicable constitutional authority for such statutory provision is article 2, § 4, of the Constitution of 1963:

"The legislature shall enact laws to regulate the time, place and manner of all nominations and elections, except as otherwise provided in this Constitution or in the Constitution and laws of the United States. The legislature shall enact laws to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting. No law shall be enacted which permits a candidate in any partisan primary or partisan election to have a ballot designation except when required for identification of candidates for the same office who have the same or similar surnames."

No one contends that it is not constitutionally permissible to the legislature to provide means for adequate identification by the electorate of candidates for public office, nor could such contention be made even arguably in the face of the quoted constitu-

tional provisions requiring the passage of laws to preserve the purity of elections and to guard against abuses of the elective franchise.   It has been the legislature's constant purpose to insist upon full and complete identification of candidates for public office in order to provide the electorate with the information necessary to cast their ballots effectively for the candidates of their choice.   That purpose is evident not alone from section 561 of the election law with which we are directly concerned but, also, from section 558 (CLS 1961, § 168.558, as amended by PA 1964, No 190 [Stat Ann 1963 Cum Supp § 6-.1558 and Stat Ann 1964 Current Material, p 425]), requiring candidates for nomination for any county, State or national office to file affidavits of identity; from section 561a (CLS 1961, § 168.561a [Stat Ann 1963 Cum Supp § 6.1561(1)]), added by PA 1960, No 88, providing that when a candidate for nomination to any public office has the same given name and surname as the person last elected to such office when that person does not seek renomination, a statement must be printed below the name of such candidate that he is not the present holder of that office; and from section 557 (CLS 1961, § 168.557 [Stat Ann 1956 Rev § 6.1557]), providing for the filing of affidavits by all candidates relative to any change which may have been made at any time in the name of a candidate and providing for the printing on the ballot of both the name of the candidate appearing on his nominating petitions and his name given at birth. In all these ways, as well as in others, the legislature has manifested its purpose to provide the electorate as adequate means of candidate identification as is practically possible.

The argument here turned not upon the right of the legislature so to provide, but rather upon the means adopted by the county election commission to effectuate that manifest legislative purpose.   Plain-

tiff's claim, with which we agree, was that designating the 2 candidates named Sullivan only by their respective residence addresses in a large metropolitan area like Wayne county was next to meaningless for the purpose of identifying them to an electorate, to the vast majority of whom they personally were unknown. However adequate residence addresses may be to identify identically named candidates for nomination to the office of prosecuting attorney for Chippewa county, with a population of 32,655, with reference to which we imply no present judgment,[1] such a designation is totally inadequate to identify such candidates for such office in Wayne county, the population of which is 2,666,739.[2]

The defendants' argument, on the other hand, in addition to upholding the adequacy for identification purposes of the residence designations they granted, rejects as totally unwarranted plaintiff's request for designation as "assistant attorney general". They contend that plaintiff no longer was an assistant attorney general when he sought the designation, having resigned from that office on the day or the day preceding his filing of his nominating petitions, and that, therefore, such designation would not reflect properly his "occupation". It was also their contention that plaintiff had accepted appointment by a circuit judge to represent an indigent defendant in a criminal proceeding since his resignation from the attorney general's staff and had since become affiliated with a law firm in the city of Detroit, thereby resuming the occupation of an attorney at law.

With due regard for the purpose sought to be served by the legislative enactment with which we

---

[1] Nor do we suggest that such designation by residence may not be adequate to identify similarly named candidates contesting for a statewide office where their residences are widely separated.

[2] 1960 populations, as given in 1963–1964 Michigan Manual, 366, 368.

are here concerned, we decline to plant decision, in this matter affecting the electorate's right to know who are the candidates for whom they vote, upon such nice questions of irrelevant fact. We may concede for sake of this portion of the argument that plaintiff had resumed the practice of law—full-time —but the fact remains that his similarly named opponent likewise was represented to be engaged in the same occupation. Thus, neither their respective residence addresses nor their common occupation sufficed as ballot designations to identify them adequately when considered from the standpoint of the elector seeking to cast an effective vote for the Sullivan of his choice.

In resolving this dilemma this Court turned to a 1950 decision of the supreme court of Minnesota, *Dougherty* v. *Holm; Peterson, Intervenor,* 232 Minn 68 (44 NW2d 83). There, a former justice of that court sought a ballot designation, pursuant to a Minnesota statute in all pertinent respects,[3] similar to our own section 561, to distinguish him from a similarly named candidate for the office of governor of the State. The secretary of State, defendant in the Minnesota proceedings, had granted the requested designation "former Supreme-Court-Justice, Saint Paul", and the supreme court of Minnesota declined to interfere notwithstanding the Minnesota statute, like ours, speaks only in terms of occupation, not former occupation, and notwithstanding the designation granted exceeded the 3-word limitation of that statute. That court's justification for its refusal to interfere, like our own

---

[3] Section 205.70 of the Minnesota statutes read as follows: "When the surnames of 2 or more candidates for the same or different offices appearing on the same ballot at any election are the same, each such candidate shall have added thereto not to exceed 3 words, indicating his occupation and residence, and upon such candidate furnishing to the officer preparing the official ballot such words, they shall be printed on the ballot with and as are the names of the candidates and immediately after his name."

justification in ordering the designation here, was based upon a profound regard for the constitutionally mandated legislative purpose of meaningful identification of candidates with the same or similar names.

That the Minnesota statute did not expressly authorize what was there done did not deter that court from affirming the only action possible which would accomplish the statute's manifest objective. Likewise, in this case, neither of the alternatives expressly provided by our statute was suitable to its objective. Our failure to act under such circumstances would have constituted an abandonment of the electorate to a bewildering Hobson's choice in a situation which the legislature clearly had manifested a purpose to avoid. Drawing upon our own earlier precedent, in *Elliott* v. *Secretary of State,* 295 Mich 245, where we ordered ballot rotation of names of candidates for the office of Justice of the Supreme Court absent specific constitutional or statutory provision therefor, we here ordered plaintiff be granted the only designation ("former assistant attorney general") which would distinguish him effectively from his opponent bearing the same surname, notwithstanding absence of express statutory provision for use of a former occupation for such purpose. In this fashion, the electorate for whose benefit ballot designations of the kind provided by section 561 are authorized, were enabled to cast their votes more effectively than otherwise they could have done.

No costs, a question of public concern having been involved.

KAVANAGH, C. J., and BLACK, SMITH, and O'HARA, JJ., concurred with SOURIS, J.

DETHMERS, J., concurred in result.

ADAMS, J. (*dissenting*). This was an emergency complaint for writ of superintending control in the nature of mandamus.[1] The plaintiff, a candidate for the office of Wayne county prosecutor in the primary election to be held in the fall of 1964, prayed that this Court issue a writ of superintending control requiring the defendants to designate his name on the ballot for Wayne county prosecutor as "assistant attorney general."

Plaintiff filed for the office of prosecutor on April 1, 1964. On July 21, 1964, a candidate by the name of John L. Sullivan also filed for that office. Plaintiff, pursuant to CLS 1961, § 168.561 (Stat Ann 1956 Rev § 6.1561), requested the Wayne county election commission to grant him the aforesaid designation. For a period of approximately 18 months up to April 1, 1964, he had been an assistant attorney general. He resigned to become a candidate for prosecutor, to join a law firm, Sullivan, Sullivan, Hull & Ranger, and to accept cases by assignment from the Wayne circuit court.[2]

On July 25, 1964, the Wayne county election commission granted the designation but upon a rehearing on July 28, 1964, it was revoked and each of the Sullivans was given a designation of resident address.

By order of this Court dated July 30, 1964, Joe B. Sullivan was granted the designation "former assistant attorney general" and John L. Sullivan

---

[1] See GCR 1963, 711, 714.—REPORTER.

[2] Page 2, transcript of minutes of meeting of election commission, July 28, 1964—afternoon session.

"It became apparent and was without dispute that Mr. Sullivan not only after April the 1st, but prior to April the 1st, had joined a law firm by the name of Sullivan, Sullivan, Hull & Ranger, which indicates that he was in the practice of law; that on the very day before his resignation had become effective, that he had accepted an assignment from Judge Joseph Rashid; and that subsequent to that time, he received other appointments in regard to representation in the courts on behalf of defendants."

was granted the designation "attorney at law." From said order I dissent for the following reasons.

Michigan election law, chap 24, § 561 (CLS 1961, § 168.561 [Stat Ann 1956 Rev § 6.1561]), provides in part as follows:

"The said ballots so prepared by the board of election commissioners in each county for use by the electors of any political party at said primary election shall include the names of all candidates of said political party for the office of governor, lieutenant governor and United States senator, the names of all candidates of said political party for district offices, and, in each county, the names of all candidates of said political party for county offices: Provided, That *if 2 or more candidates for the same office have the same or similar surnames, the board of election commissioners, upon the request of any such candidate filed in writing not later than 3 days after the last day for filing nominating petitions, shall print the occupation or residence of each of such candidates having the same or similar surnames on the ballot* or ballot labels under their respective names. The term 'occupation' shall be construed to include political office, even though it is not the candidate's principal occupation." (Emphasis supplied.)

The election commission concluded that, he having joined a law firm and engaged in the practice of law since April 1, 1964, the present occupation of Joe B. Sullivan was "attorney," and that since the present occupation of John L. Sullivan was also "attorney" the designation of occupation would not effect the purpose of the statute by distinguishing one from the other. In accordance with the statute, each candidate was granted a designation of his residence.

Plaintiff contends that the designation of his residence is insufficient identification in a county the

size of Wayne and that, consequently, by authority of *Dougherty* v. *Holm; Peterson, Intervenor,* 232 Minn 68 (44 NW2d 83), he should be permitted the designation "assistant attorney general." In *Dougherty* a majority of the court held that a justice of the supreme court who had been in that position for almost 14 years, and who, by virtue of his position, was unable to become an active candidate while he occupied the bench, was entitled to the designation "former Supreme-Court-Justice, Saint Paul" as a means of occupational identification.

Based upon the reasoning of the majority of the Minnesota court, this Court has substituted its judgment for that of the election commission in the absence of any allegation of fraud or wrongful or arbitrary action on the part of that commission.

In the construction of the Michigan statute, I do not believe that a man's *occupation* and the *position* which he holds or may have held are meant to be synonymous. The word occupation has a recognized and well-accepted meaning. Webster's New International Dictionary (2d ed, 1960) defines it, so far as is applicable here, as follows:

"2. That which occupies, or engages, the time and attention; the principal business of one's life; vocation; business."

By way of further explanation is found the following:

"One's occupation is that to which one's time is devoted, or in which one is regularly or habitually engaged."

This Court in the case of *People* v. *DeRose,* 230 Mich 180, at page 182, construed the word "occupation" and said:

"One's occupation is the regular business in which he is engaged for profit."

It is significant that in the affidavit as to change of name and identity filed by Joe B. Sullivan on April 1, 1964, he stated:

"that he is an attorney at law (assistant attorney general)."

The *occupation* of those engaged in the practice of the law is attorney or lawyer. The *title* under which one carries on his occupation or profession varies from position to position.

The office of assistant attorney general is not a political office. It is under Michigan civil service and partisan political activity while holding such office is circumscribed.[3] Consequently the provision in the statute with regard to political office is not applicable.

A further objection to the granted designation is that Joe B. Sullivan is not now an assistant attorney general. The language of the statute is clear that the sought-for designation must apply to one's occupation at the time of application for designation, not at the time of filing for office. The statute requires that:

"The board of election commissioners, upon the request of any such candidate filed  *  *  *  not later than 3 days after the last day for filing,  *  *  * shall print *the occupation*  *  *  * of each of such candidates." (Emphasis supplied.)

Reading from the statute, "the occupation" could refer to any period of time. However, it is clear that it must refer to only 1 period of time since "the

---

[3] Rules of the civil service commission, Section 7.3.

"No employee in the State civil service shall become a candidate for nomination to any elective office without first obtaining a leave of absence. The leave of absence shall remain in force and effect until the candidacy becomes official by the filing of petitions or by the action of a caucus or a convention. When a State civil service employee becomes an official candidate for elective office in any manner, or accepts appointment to an elective office set forth as above, he shall at once resign from his civil service position."

occupation" means just that, not "the occupations." Thus, "the occupation" of a candidate must refer to only *one* occupation, and this would not logically be a past occupation.

Consequently, even if it be granted that "assistant attorney general" is a proper term under the statute, it is improper in this case because, in fact, Joe B. Sullivan does not presently hold that position. On the other hand, to grant the designation "former assistant attorney general" is for this Court to fashion relief not prayed for by the plaintiff and relief which is completely beyond the bounds of statutory authority.

Article 2, § 4, of the Constitution of 1963 provides:

*"The legislature shall enact laws to regulate* the time, place and manner of all nominations and *elections,* except as otherwise provided in this Constitution or in the Constitution and laws of the United States. *The legislature shall enact laws to preserve the purity of elections,* to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting. No law shall be enacted which permits a candidate in any partisan primary or partisan election to have a ballot designation except when required for identification of candidates for the same office who have the same or similar surnames." (Emphasis supplied.)

In the case of *Elliott* v. *Secretary of State,* 295 Mich 245, this Court ordered the rotation of names of candidates on a nonpartisan ballot even though this was not required by law, saying (pp 249, 250):

"It is not consistent with fairness or purity of elections or the avoidance of misuse of elective franchise for election officials to prepare ballots in such a condition as will afford 1 candidate or nominee an unfair advantage over rival candidates or nominees. Hence we think the conclusion is justified that,

even in the absence of specific constitutional or statutory provision, it is the clear duty of election officials, when reasonably possible, to prepare ballots in such a manner as will most effectively comply with the constitutional mandate touching the preservation of the purity of elections and guarding against abuse or misuse of the elective franchise."

Can it be said that in the present case, to be consistent with fairness or purity of elections and to avoid misuse of the elective franchise, the plaintiff ought to be granted the designation which has been determined upon by the Court and which he does not even request? As heretofore noted, the designation of occupation would be inadequate since both men are attorneys. (In fact, such is the case as to all candidates for said office.) Consequently, the other provision of the statute, designation by residential address, must be resorted to as was done by the election commission. Wayne county has a population of 2,666,739. Because of this large population can it be said that a residence address is meaningless and will not serve as a means to identify the candidates? Such may be the case, but I am unable to make any such finding *as a matter of fact* upon the record before this Court. Absent such a finding, I do not believe this Court is warranted in going beyond the provisions of the statute.

It has long been the rule of this State that courts should refrain from usurping or interfering with the functions of an administrative body. The Court so stated the rule in the case of *Goodfellow* v. *Detroit Civil Service Commission,* 312 Mich 226, 232:

"We must not usurp the functions of an administrative body. This the Constitution of the State forbids. Constitution (1908), art 4."

In the case of *Bischoff* v. *County of Wayne,* 320 Mich 376, on page 386, the Court quoted with ap-

proval the rule in the case of *Mann* v. *Tracy,* 185 Cal 272, 277 (196 P 484):

" 'The determination of facts and the propriety of action of administrative boards is not a judicial function.' "

The unanimous action taken by the election commission was explained by member Edgar M. Branigin, immediately following the vote thereon, as follows:

"The only other matter is this, that I believe that last time we ran into a problem in regard with the designation of 'attorney at law' involving in the same John L. Sullivan vs. Joe B. Sullivan; and at that time, we first felt that because he was an attorney at law, that he should be granted the designation of 'attorney at law' to Joe B. Sullivan and only the address to the other one.

"However, we found out after a little research that it was the general belief of everyone that we talked to, that anyone in order to be a candidate for prosecuting attorney would have to be a lawyer; and, therefore, to give the designation 'attorney at law' would be unfair to the others because some people might even infer that others that were in the race were not attorneys at law; and that is the reason why I feel the designation should only be given as his address."—Minutes of election commission, July 28, 1964, afternoon session.

Since plaintiff was accorded by the Wayne county election commission the most suitable designation provided for in the statute, I voted to deny the application.

KELLY, J., did not sit.