*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT DAVIS,

       Plaintiff-Appellant,

v

SECRETARY OF STATE,

       Defendant-Appellee.

FOR PUBLICATION
September 16, 2020
9:00 a.m.

No. 354622
Court of Claims
LC No. 20-000099-MM

Before: TUKEL, P.J., and METER and REDFORD, JJ.

REDFORD, J.

Plaintiff, Robert Davis, appeals by right the Court of Claims' order granting defendant, Michigan's Secretary of State, summary disposition under MCR 2.116(C)(8) and (10) and dismissing all of plaintiff's claims. For the reasons set forth below, we affirm.

## I. BACKGROUND FACTS

In the November 2018 election, Michigan voters approved passage of Proposition No. 18-3 (Proposal 3), which, among other things, amended the Michigan Constitution, Const 1963, art 2, § 4, to provide all registered voters the right to vote by absentee ballot without giving a reason. In the case before us, plaintiff challenged defendant, Secretary of State's unsolicited sending of absent voter ballot applications to registered Michigan voters by mail before the August 4, 2020 primary election and November 3, 2020 general election, accompanied by a letter that encouraged absentee voting from home to stay safe in relation to the COVID-19 outbreak. Defendant did not mail absent voter ballot applications to voters in locales where the local election officers planned to send applications to all registered voters, nor did the Secretary send actual ballots.

Plaintiff sued defendant after receiving an unsolicited application that he could use for applying to his local clerk for an absentee ballot.[1] Plaintiff sought declaratory and injunctive relief

---

[1] The Court of Claims consolidated plaintiff's action with two similar Court of Claims cases, *Cooper-Keel v Benson*, Case No. 2020-000091-MM, and *Black v Benson*, Case No. 2020-000096-

alleging that defendant lacked authority under state law and the constitution to send unsolicited applications for absentee ballots to all registered voters and violated the constitutional requirement of the separation of powers under Const 1963, art 3, § 2. He sought to enjoin defendant from mass mailing unsolicited absent voter ballot applications to registered voters in Michigan. Defendant answered plaintiff's complaint and moved for summary disposition.

In an opinion and order issued August 25, 2020, the Court of Claims concluded that defendant had authority to send the absent voter ballot applications at issue, granted summary disposition for defendant under MCR 2.116(C)(8) and (C)(10), and dismissed the consolidated cases. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition in an action seeking declaratory relief. *League of Women Voters of Mich v Secretary of State*, __ Mich App ___, ___; ___ NW2d ___ (*League of Women Voters I*) (2020) (Docket Nos. 350938 and 351073) slip op at 6, oral argument granted on lv application. We also review de novo questions of constitutional and statutory interpretation which present issues of law. *Frank v Linkner*, 500 Mich 133, 140; 894 NW2d 574 (2017); *Makowski v Governor*, 495 Mich 465, 470; 852 NW2d 61 (2014).

Concerning the interpretation of the state constitution and statutes, this Court in *League of Women Voters of Mich v Secretary of State*, ___ Mich App ___, ___; ___ NW2d ___ (*League of Women Voters II*) (2020) (Docket No. 353654); slip op at 6-7, lv den ___ Mich ___ (2020), explained the rules for interpreting constitutional provisions as follows:

> In interpreting constitutional provisions, this Court applies two rules of interpretation. *Makowski v Governor*, 495 Mich 465, 472, 473; 852 NW2d 61 (2014). "First, the interpretation should be the sense most obvious to the common understanding; the one which reasonable minds, the great mass of people themselves, would give it." *Id.* (quotation marks and citation omitted). "Words should be given their common and most obvious meaning, and consideration of dictionary definitions used at the time of passage for undefined terms can be appropriate." *In re Burnett Estate*, 300 Mich App 489, 497-498; 834 NW2d 93

---

MZ. Plaintiff Cooper-Keel did not appeal the order granting summary disposition. Plaintiff Black initially took no action to appeal that order either. However, on September 10, 2020, two days *after* the day on which, pursuant to this Court's previously released scheduling order, this expedited appeal had been submitted to the Court, Plaintiff Black filed a motion to intervene in this appeal. On September 11, 2020, this Court issued an order denying Plaintiff Black's request to intervene because the expedited treatment of this matter made it impracticable at that late stage to grant intervention. *Davis v Secretary of State*, unpublished order of the Court of Appeals entered September 11, 2020 (Docket No. 354622). We note that as the Court of Claims granted summary disposition against Plaintiff Black via the same opinion and order in which it had granted summary disposition against Plaintiff Davis and which is the subject of the instant appeal, Plaintiff Davis's thorough briefing has had the effect of fully protecting Plaintiff Black's interest in the outcome of this case.

(2013). Every constitutional provision "must be interpreted in the light of the document as a whole, and no provision should be construed to nullify or impair another." *Lapeer Co Clerk v Lapeer Circuit Court*, 469 Mich 146, 156; 665 NW2d 452 (2003). Second, the interpretation should consider "the circumstances surrounding the adoption of the constitutional provision and the purpose sought to be accomplished." *Id*.

In *Sau-Tuk Indus, Inc v Allegan County*, 316 Mich App 122, 136; 892 NW2d 33 (2016), this Court explained the rules for statutory interpretation:

> When interpreting a statute, our primary goal is to give effect to the intent of the Legislature. If the language of a statute is unambiguous, we presume the Legislature intended the meaning expressed in the statute. A statutory provision is ambiguous only if it conflicts irreconcilably with another provision or it is equally susceptible to more than one meaning. . . . When construing a statute, we must assign every word or phrase its plain and ordinary meaning unless the Legislature has provided specific definitions or has used technical terms that have acquired a peculiar and appropriate meaning in the law.

Courts "may not pick and choose what parts of a statute to enforce" but "must give effect to every word of a statute if at all possible so as not to render any part of the statute surplusage or nugatory." *Id*. at 143 (citations omitted). Courts "may not speculate regarding legislative intent beyond the words expressed in the statute." *Id*. at 145. "This Court reads the provisions of statutes reasonably and in context, and reads subsections of cohesive statutory provisions together." *Detroit Pub Schs v Conn*, 308 Mich App 234, 247-248; 863 NW2d 373 (2014) (citation omitted). When courts interpret statutes, they must first look to the specific statutory language to determine the intent of the Legislature, and if the language is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted. *Univ'l Underwriters Ins Group v Auto Club Ins Ass'n*, 256 Mich App 541, 544; 666 NW2d 294 (2003).

## III. ANALYSIS

### A. THE SECRETARY OF STATE'S CONSTITUTIONAL AND STATUTORY AUTHORITY

Plaintiff argues that the Court of Claims committed legal error by ruling that defendant had authority to distribute unsolicited applications for absentee ballots to Michigan registered voters. He contends that MCL 168.759 does not expressly authorize defendant to mail out such applications and asserts that, read correctly, our constitution and state law prohibit defendant from doing so. Thus, he argues, the Court of Claims should not have granted defendant summary disposition. We disagree.

The Michigan constitution provides: "All political power is inherent in the people." Const 1963, art 1, § 1.[2] In 2018, the people of this state exercised this power when they, as registered voters, amended the constitution by approving Proposal 3. As a result of the enactment of Proposal 3, all registered qualified voters have a right to vote absentee without giving a reason for desiring to do so.[3] As a result of the passage of Proposal 3, Const 1963, art 2, § 4 now provides in relevant part:

> (1) Every citizen of the United States who is an elector qualified to vote in Michigan shall have the following rights:
>
> * * *
>
> (g) The right, once registered, to vote an absent voter ballot without giving a reason, during the forty (40) days before an election, and the right to choose whether the absent voter ballot is applied for, received and submitted in person or by mail. During that time, election officials authorized to issue absent voter ballots shall be available in at least one (1) location to issue and receive absent voter ballots during the election officials' regularly scheduled business hours and for at least eight (8) hours during the Saturday and/or Sunday immediately prior to the election. Those election officials shall have the authority to make absent voter ballots

---

[2] Two of our state's previous three constitutions made this exact same declaration as to the source of constitutional legitimacy. See Const 1908, art 1, § 1; Const 1835, art 1, § 1.

[3] Prior to Proposal 3 of 2018 and its repeal by 2018 PA 603 § 1, qualification to vote absentee was controlled by MCL 168.758, which provided in relevant part:

> (1) For the purposes of this act, "absent voter" means a qualified and registered elector who meets 1 or more of the following requirements:
>
> (a) On account of physical disability, cannot without another's assistance attend the polls on the day of an election.
>
> (b) On account of the tenets of his or her religion, cannot attend the polls on the day of election.
>
> (c) Cannot attend the polls on the day of an election in the precinct in which he or she resides because of being an election precinct inspector in another precinct.
>
> (d) Is 60 years of age or older.
>
> (e) Is absent or expects to be absent from the township or city in which he or she resides during the entire period the polls are open for voting on the day of an election.
>
> (f) Cannot attend the polls on election day because of being confined in jail awaiting arraignment or trial.

available for voting in person at additional times and places beyond what is required herein.

* * *

(h) . . . . All rights set forth in this subsection shall be self-executing. This subsection shall be liberally construed in favor of voters' rights in order to effectuate its purposes. Nothing contained in this subsection shall prevent the legislature from expanding voters' rights beyond what is provided herein. This subsection and any portion hereof shall be severable. If any portion of this subsection is held invalid or unenforceable as to any person or circumstance, that invalidity or unenforceability shall not affect the validity, enforceability, or application of any other portion of this subsection.

(2) Except as otherwise provided in this constitution or in the constitution or laws of the United States the legislature shall enact laws to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting. . . .

Likewise, our constitution and laws define the role and duties of the Secretary of State. Const 1963, art 5, § 3 in relevant part states "[t]he head of each principal department shall be a single executive unless otherwise provided in this constitution or by law. The single executives heading principal departments shall include a secretary of state, a state treasurer and an attorney general." As a single executive heading a principal department, the Secretary of State shall "perform duties prescribed by law." Const 1963, art 5, § 9.

Under the Michigan Election Law, MCL 168.1 *et seq.*, and specifically MCL 168.21, the Secretary of State is the chief elections officer of the state and has supervisory authority over local election officials performing their duties. *League of Women Voters I, supra*, slip op at 3; *Citizens Protecting Michigan's Constitution v Secretary of State*, 324 Mich App 561, 566; 922 NW2d 404 (2018), aff'd 503 Mich 42; 921 NW2d 247 (2018). The Secretary of State is required to perform certain duties regarding elections:

(1) The secretary of state shall do all of the following:

(a) Subject to subsection (2), issue instructions and promulgate rules pursuant to the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328, for the conduct of elections and registrations in accordance with the laws of this state.

(b) Advise and direct local election officials as to the proper methods of conducting elections.

* * *

(e) Prescribe and require uniform forms, notices, and supplies the secretary of state considers advisable for use in the conduct of elections and registrations.

Under MCL 168.31 local election officials must follow the Secretary of State's instructions regarding the conduct of elections. *Hare v Berrien Co Bd of Election Comm'rs*, 373 Mich 526, 531; 129 NW2d 864 (1964). Under MCL 168.32, the Legislature authorized a Bureau of Elections within the office of the Secretary of State, and authorized the Secretary of State to appoint a Director of Elections to whom is delegated the powers to perform the duties of the Secretary of State respecting the supervision and administration of election laws.

## B. MICHIGAN ELECTION LAW REGARDING ABSENTEE BALLOTS

MCL 168.759, which addresses applying for an absent voter ballot, provides in relevant part as follows:

(3) An application for an absent voter ballot under this section may be made in any of the following ways:

(a) By a written request signed by the voter.

(b) On an absent voter ballot application form provided for that purpose by the clerk of the city or township.

(c) On a federal postcard application.

(4) An applicant for an absent voter ballot shall sign the application. A clerk or assistant clerk shall not deliver an absent voter ballot to an applicant who does not sign the application. A person shall not be in possession of a signed absent voter ballot application except for the applicant; a member of the applicant's immediate family; a person residing in the applicant's household; a person whose job normally includes the handling of mail, but only during the course of his or her employment; a registered elector requested by the applicant to return the application; or a clerk, assistant of the clerk, or other authorized election official. A registered elector who is requested by the applicant to return his or her absent voter ballot application shall sign the certificate on the absent voter ballot application.

(5) The clerk of a city or township shall have absent voter ballot application forms available in the clerk's office at all times and shall furnish an absent voter ballot application form to anyone upon a verbal or written request. The absent voter application must be in substantially the following form:[4]

---

[4] The Legislature in subsection (5) then set forth the required format an absentee ballot application must take.

\* \* \*

(6) The following instructions for an applicant for an absent voter ballot must be included with each application furnished an applicant:[5]

\* \* \*

(7) A person who prints and distributes absent voter ballot applications shall print on the application the warning, certificate of authorized registered elector returning absent voter ballot application, and instructions required by this section.

As related to the question before the Court of Claims and this Court, the Legislature has provided that an application for an absent voter ballot may be obtained by mail by a voter submitting a signed written request,[6] by submitting an absent voter application form provided by the clerk of a city or township,[7] or by a federal postcard application.[8] MCL 168.759(7), as set forth above, requires any person printing or distributing absent voter ballot applications to follow certain guidelines and requirements.

In this case, defendant, acting as the chief elections officer of the state, sent absentee voter applications to registered Michigan voters. MCL 168.759 does not mention the Secretary of State, nor does it place any restrictions on the Secretary of State's powers under MCL 168.21 or MCL 168.31; those powers specifically grant defendant broad discretion to fulfill the duties of the Secretary of State in facilitating the election process and enabling qualified registered voters to exercise their constitutional rights to vote, including by absentee ballots.

Plaintiff cites *Taylor v Currie*, 277 Mich App 85; 743 NW2d 571 (2007), to argue that MCL 168.759 precludes mailing unsolicited absentee voter applications to registered voters. We find however, as did the court below, that *Taylor* is inapposite to the facts of this case. In *Taylor*, the defendant city clerk, a candidate in the election, mailed unsolicited absentee voter ballot applications to approximately 150,000 of the 500,000 registered voters in Detroit. This Court explained that the defendant, as a municipal officer, had only those powers conferred by law, and that MCL 168.759(5) limited her authority and prohibited conduct beyond the scope of the statutory duties. *Id*. at 94-95. This Court concluded that the statute did not permit the defendant's mass mailing of absentee voter applications because "[t]o construe MCL 168.759 to permit Currie to distribute, in her official capacity, what amounts to propaganda at the city's expense is certainly not within the scope of Michigan election laws or the Michigan Constitution." *Id*. at 96-97. Here, however, defendant is not a candidate in the forthcoming election, nor has she limited her mailing

---

[5] The Legislature in subsection (6) then set forth the required format and language regarding instructions that must be followed by an absentee voter.

[6] MCL 168.759(3)(a).

[7] MCL 168.759(3)(b).

[8] MCL 168.759(3)(c).

of applications to a particular subset of voters. Consequently, *Taylor* has no application to the present case.

## C. ANALYSIS OF THE SECRETARY OF STATE'S AUTHORITY REGARDING THE CONSTITUTIONAL RIGHT TO VOTE BY ABSENTEE BALLOT

As chief elections officer, with constitutional authority to "perform duties prescribed by law," the Secretary of State had the inherent authority to take measures to ensure that voters were able to avail themselves of the constitutional rights established by Proposal 3 regarding absentee voting.

As explained by our Supreme Court in *Elliott v Secretary of State*, 295 Mich 245, 249; 294 NW 171 (1940), "everything reasonably necessary to be done by election officials to accomplish the purpose of" a constitutional provision regarding the procedure for the election of Justices of the Supreme Court, "is fairly within its purview." Thus, election officials should "prepare ballots in such a manner as will most effectively comply with the constitutional mandate touching the preservation of the purity of elections." *Id.* at 250.

The amendment at issue in *Elliott* changed the manner in which judicial officers were elected in Michigan from a partisan ballot to a nonpartisan ballot. The petitioner there sought to compel the Secretary of State to rotate the order of candidates' names in the nonpartisan part of the ballot. In holding that candidates' names in fact had to be rotated, our Supreme Court relied on the "purity of elections" provision of the constitution as requiring election officials to ensure that ballots are created in such a manner as to accomplish the purpose of the constitutional amendment, even absent specific statutory guidance. *Elliott* retains its vitality under the Constitution of 1963. See *Wells v Kent Co Bd of Election Comm'rs*, 382 Mich 112, 123; 168 NW2d 222 (1969).

We find that the Secretary of State's action in sending an application which each registered voter was free to fill out and return, or not, fell within her authority as chief elections officer of the state, and comported with her constitutional obligation to liberally construe Const 1963, art 2, § 4(1) to effectuate its purposes. See *Elliott*, 295 Mich at 250 (noting that "it is the clear duty of election officials, when reasonably possible, to prepare ballots in such a manner as will most effectively comply with the constitutional mandate" at issue.). While MCL 168.31(1)(e) is not applicable because the Secretary did not "prescribe" to local election officials any particular "uniform forms, notices, and supplies the Secretary of State considers advisable for use in the conduct of elections," that section, together with the Secretary of State's role as chief elections officer, evidences that the Legislature granted the Secretary a broad measure of discretion in conducting and supervising elections. Such discretion certainly includes providing voters information and absent voter applications that substantially comply with the form prescribed by the Legislature in MCL 168.759(5). See *League of Women Voters II*, slip op at 8 (noting that "voting is not the single act of marking a ballot, but the entire process," including applying for a ballot.). Even more to the point, we find nothing in MCL 168.21 and MCL 168.31 that *prohibits* the Secretary of State from sending absent voter ballot applications to qualified registered voters in this state. Moreover, by furnishing the applications, the Secretary of State furthered the purposes of informing qualified registered voters of their right to vote by absentee ballot and facilitated their first step of applying for an absentee ballot to enable them to exercise their constitutional rights if

they so choose. Certainly, the Secretary could have declined to provide such applications and relied on voters' ability to learn of the right to vote absentee, and how to exercise it, on their own. But undoubtedly there were voters who would have been unaware of their new constitutional right to vote absentee and who would not have known, absent conducting research, how to exercise that right. Under the circumstances, the decision which the Secretary of State made, sending an application to each registered voter, which the voter was then free to fill out and return, or not, comported with the constitutional directive to liberally construe Const 1963, art 2, § 4(1) to effectuate its purposes and therefore was not an abuse of discretion on the part of the Secretary.

## IV. RESPONSE TO PARTIAL DISSENT

Regarding the thoughtful and well written partial dissent, we respectfully disagree for the reasons already stated in the majority opinion. Additionally, we do not believe the principle of *expressio unius est exclusio alterius* applies in the instant case. First, MCL 168.759(3) appears to be permissive: it provides that a voter "may" obtain a ballot in a number of ways, but, being phrased permissively, does not preclude that other means are available as well. See *Walters v Nadell,* 481 Mich 377, 383; 751 NW2d 431 (2008) (explaining that the word 'may' ordinarily signifies a permissive provision). We do acknowledge, of course, that "[a] necessary corollary to the plain meaning rule is that courts should give the ordinary and accepted meaning to . . . the permissive word 'may' unless to do so would clearly frustrate legislative intent as evidenced by other statutory language or by reading the statute as a whole." *Browder v Int'l Fidelity Ins Co,* 413 Mich 603, 612; 321 NW2d 668 (1982).

In addition, we note that the statute directs how a *voter* may obtain an absentee ballot; it does not purport to control or direct how election officials perform their duties. And finally, to the extent that MCL 168.759(3)(b) limits the means by which a voter may apply for an absentee ballot, as that subsection provides that a form application must be provided "by the clerk of the city or township," that limitation is irrelevant in the present circumstances, because MCL 168.759(3)(a) provides that an application is valid merely by being in writing and signed by the voter, with no further limitations or conditions. The form mailed by the Secretary, if signed by a voter, would fully satisfy the statutory requirements of § 759(3)(a). We also note that the partial dissent does not address the effects of Proposal 3, or the holding of *Elliott* that everything necessary for election officials to effectuate the purposes of a constitutional provision is within such officials' purview. We understand such purview to include the authority of the chief elections officer to notify voters of a newly-available constitutional mechanism for voting.

As a result, the specific language of the statute, in conjunction with the constitutional and statutory duties of the Secretary of State and the specific language of the Const 1963, art 2, § 4(1) (g) and (h) and (2), lead us to respectfully disagree with the dissent.

## V. CONCLUSION

We conclude that the authority and discretion afforded the Secretary of State by the constitution and state law permit defendant to send unsolicited absent voter ballot applications to all Michigan qualified registered voters, as a means of implementing the mandates of Const 1963, art 2, § 4.

We further conclude that the Court of Claims was correct in holding that MCL 168.759 in its current form does not prohibit the actions taken by defendant. We decline to adopt plaintiff's narrow interpretation of MCL 168.759, because contrary to plaintiff's assertion, the statute does not restrict how absent voter ballot *applications* may be provided to qualified registered voters, nor does it prohibit the Secretary of State from assisting in the process. Had the Legislature meant to restrict the manner of the provision of applications and prohibited the Secretary of State from doing so, it could have done so but did not. A "legislature legislates by legislating, not by doing nothing, not by keeping silent." *McCahan v Brennan*, 492 Mich 730, 749; 822 NW2d 747 (2012) (quotation marks and citation omitted).[9]

We also conclude that the mailing of unsolicited absent voter ballot applications to Michigan's qualified registered voters by defendant did not run afoul of MCL 168.726's prohibition that "No ballot shall be delivered to an elector by any person other than 1 of the inspectors of election and only within the polling place, except as provided in this act for absentee voters' ballots." The Secretary of State sent no absentee ballot to any voter.

The Secretary of State transmitted by mail, an application which a registered voter could choose to submit or not to the appropriate clerk based on the voter's place of residence. Only after that office had completed all statutorily required verifications could a ballot then be sent to the registered voter. By sending absent voter ballot applications, the Secretary of State did not interfere with the local clerks' duties under MCL 168.759 to review and approve applications before issuing applicants absentee ballots.[10]

---

[9] We give no weight to the Court of Claims' statement that it appears the Legislature would be prohibited by Const 1963, art 2 § 4, from enacting a statute that restricted defendant from sending unsolicited absent voter ballot applications to registered voters. Because that statement was dicta in the Court of Claims' opinion, it was unnecessary for us to address it here.

[10] We further note, once an application for an absentee ballot is made, pursuant to its authority under Const 1963, art 2, § 4(2), the Legislature has provided a substantial process of verification in the Michigan Election Law. These include but are not limited to the following: (a) comparison of the voter's signature on the application for an absentee ballot and the voter's recorded signature on the clerk's voter rolls before an absentee ballot is sent out in response to a received application. See MCL 168.761(1) and (2); (b) providing that upon return of the completed ballot, the signature on the envelope which contains the completed ballot is again compared with the signature in the clerk's files, MCL 168.765a(6) and MCL 168.766); and (c) providing that after absentee ballots are counted they must be placed in an approved ballot container and sealed, MCL 168.765a(11). The Legislature has also set forth criminal sanctions for unlawful activity related to absentee ballots. These include that "[a] person who makes a false statement in an absent voter ballot application is guilty of a misdemeanor. A person who forges a signature on an absent voter ballot application is guilty of a felony. A person who is not authorized in this act and who both distributes absent voter ballot applications to absent voters and returns those absent voter ballot applications to a clerk or assistant of the clerk is guilty of a misdemeanor." See MCL 168.759 (8); and that if any person discloses an election result or in any manner characterizes how a ballot being counted

Defendant's conduct did not interfere with Michigan qualified registered voters' rights. Ultimately, it is up to each voter to decide whether to vote in person or apply for an absentee ballot. The Secretary's actions were entirely consistent with those rights as established by the electorate's passage of Proposal 3, amending our Constitution so that every elector qualified to vote in Michigan shall have the "right, once registered, to vote an absent voter ballot without giving a reason, . . . and the right to choose whether the absent voter ballot is applied for, received and submitted in person or by mail." Const 1963, art 2, § 4(g).

Accordingly, the Court of Claims did not err by granting defendant summary disposition.

Affirmed.

/s/ James Robert Redford
/s/ Jonathan Tukel

---

has voted before the time the polls can legally be closed on election day is guilty of a felony, MCL 168.765a(10).