*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT DAVIS,

        Plaintiff-Appellant,

v

SECRETARY OF STATE,

        Defendant-Appellee.

UNPUBLISHED
November 21, 2023

No. 363793
Court of Claims
LC No. 20-000196-MZ

Before: PATEL, P.J., and BOONSTRA and RICK, JJ.

PER CURIAM.

Plaintiff appeals as of right two orders of the Court of Claims, one granting summary disposition in favor of defendant, and the other granting defendant's motion to compel plaintiff's appearance at a deposition and imposing sanctions for his failure to attend a previously scheduled deposition. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff is a registered and qualified elector in Michigan. In September 2020, plaintiff filed a complaint in the Court of Claims, alleging, among other counts, that defendant Secretary of State violated MCL 168.759 by creating a website that allowed registered voters to apply online for an absentee voter (AV) ballot.[1] Plaintiff sought a declaratory judgment that the online application process violated the applicable statute and constituted a "rule" that had not been promulgated in accordance with the Administrative Procedures Act (APA), MCL 24.201 *et seq.* He asked the court to enjoin defendant from processing online AV applications on behalf of local clerks. In a separate claim, plaintiff sought relief under the Freedom of Information Act (FOIA),

---

[1] Plaintiff's complaint, after amendment, alleged four claims against defendant. Counts I and III were dismissed by the Court of Claims. Plaintiff does not appeal those dismissals.

MCL 15.231 *et seq.* There, he alleged that he had e-mailed a request to defendant under FOIA for "an unredacted copy of Judicial Candidate Nicholas Joh [sic] Hathaway's affidavit of identity,"[2] but that defendant failed to respond to the request. Plaintiff believed this alleged failure occurred because defendant secretly supported Hathaway's candidacy.[3] Plaintiff sought sanctions and a declaratory judgment that defendant unlawfully, deliberately, arbitrarily, and capriciously refused to disclose a document that was not exempt from disclosure.

In September 2022, after nearly two years of litigation, the Court of Claims entered the referenced order compelling plaintiff's deposition. The court awarded discovery sanctions to defendant. Defendant thereafter moved for summary disposition. The Court of Claims granted defendant's motion in an opinion and order issued in October 2022. Because the factual basis for each of plaintiff's appealed issues is nearly entirely separate from the others, except for the parties involved, we will separately summarize the underlying facts for each of them before turning to an analysis of the issues on appeal.

## A. ELECTION-LAW CLAIM

Before the primary election was held in August of 2020, defendant established an AV ballot application website.[4] The AV ballot application website allows users to enter the information they would otherwise have placed on a paper AV ballot application. The website then transmits the application to the appropriate local clerk for processing. Michellena Belton, the individual primarily responsible for overseeing the AV ballot application website, explained that in the past, some local clerks would accept AV ballot applications by facsimile transmission or e-mail. However, either option would have required voters to print out the application and manually sign it before submitting it to the clerk. Belton asserted that the website was created for at least three major reasons: to permit electronic applicants to skip the step of printing, to reduce the number of

---

[2] Hathaway's full name is "Nicholas John Hathaway." See *State Bar of Michigan Member Directory* <https://www.michbar.org/memberdirectory/detail/id=69631> (accessed July 10, 2023).

[3] Hathaway was not elected to the Third Circuit bench in the 2020 election. See *Election Summary Report, November 3, 2020–General Election, Wayne County, Michigan Official Results* <https://www.waynecounty.com/ documents/clerk/!electionsum_11032020.pdf> (accessed July 10, 2023). However, Hathaway was elected to the Third Circuit bench in the 2022 election. *Election Summary Report, November 8, 2022–General Election, Wayne County, Michigan Official Results* <https://www.waynecounty.com/documents/ clerk/official_summary_11822.pdf> (accessed July 10, 2023).

[4] The website is available at <https://mvic.sos.state.mi.us/AVApplication/Index>. The website bears the caption of "Michigan Online Absent Voter Ballot Application." To avoid confusing the website with an actual AV ballot application, we will refer to it as the AV ballot application website.

people voting in person, and to minimize reliance on the United States Postal Service. This information was confirmed by Bureau of Elections Director Jonathan Brater.

Plaintiff alleged that he had received a postcard, mailed by defendant, inviting recipients to apply for an AV ballot using the website. Brater and Belton both explained that the AV ballot application website would collect information from users for forwarding to local clerks, who would actually process the AV ballot applications. Because the website made use of an electronic signature, it required the applicant to have a signature already on file with the Department of State from the applicant's state identification or driver's license. The applicant must also already have been a registered voter. The applicant would "sign" the application by authorizing the use of the stored signature, whereupon the system would import the applicant's information directly into the applicant's qualified voter file (QVF).[5] The system would then notify the applicant's local clerk of the application. The system did not, itself, store any of the applicant's personal information. Local clerks had their own accounts to log into the QVF, and would remain obligated to verify the genuineness of the applicant's signature, no matter how the application was submitted. Clerks were only permitted to mail an AV ballot if the signatures matched. The actual AV ballot received by the voter would be the same regardless of the method used to make the request.

Plaintiff testified at his deposition that he had signed in to the AV ballot application website "just to see how it operated," but had not actually used it to register for an AV ballot. Plaintiff requested a declaratory judgment from the Court of Claims regarding the AV ballot application website because he "was unsure whether or not [defendant] was violating the law or she had the legal statutory authority to do what she was doing," and that "[defendant's] conduct was clearly unlawful" based on his reading of MCL 168.759. Plaintiff also believed his vote could be invalidated if he used the website. He speculated that he could have been injured because he was "afraid to utilize this tool." He claimed that as an elector, he had standing and a need to ensure that defendant was properly administering and enforcing the law.

Defendant moved for summary disposition, which was granted by the Court of Claims. In its opinion and order granting the motion, the Court of Claims held that plaintiff presented no evidence substantiating the possibility of any harm to himself or anyone else arising from the use of the website, opining that his "concern about the fate of his vote should he use the on-line system appears to be of his own making." It therefore held that plaintiff had not shown the existence of an actual controversy such that the court could entertain plaintiff's request a declaratory judgment. The Court of Claims then proceeded to reject plaintiff's argument "that all actions of an administrative agency must be undertaken through rulemaking," observing that the plain language of MCL 168.31(1) empowered the Department of State to promulgate rules and to issue

---

[5] The QVF has been described as "a statewide computer database of registered voters that is available to election officials throughout the state, which enables them to track the process by which people vote via AV ballots." *People v Hawkins*, 340 Mich App 155, 162; 985 NW2d 853 (2022); see also MCL 168.509o. Among other things, the QVF must, if possible, be used by local clerks to verify the genuineness of an AV ballot applicant's signature. MCL 168.766.

instructions. The court also noted that plaintiff never provided a copy of the postcard.[6] In any event, the court found it "difficult to see how a postcard explaining an optional means to order an absentee ballot has the force of law given that no one is required to use it and no one is barred from ordering an absentee ballot by other means." The Court of Claims concluded that, if anything, plaintiff should have brought a mandamus action.[7] It granted summary disposition in favor of defendant on plaintiff's election-law claim.

## B. FOIA CLAIM

On October 1, 2020, plaintiff sent an e-mail entitled "Copy of Affidavit of Identity Filed by Nicholas John Hathaway, Candidate for Judge of the Third Circuit Court Wayne County," to several individuals employed by the Department of State. The body of the e-mail provided:

> Pursuant to Michigan Election Law and Michigan's Freedom of Information Act (FOIA), I am respectfully requesting to be emailed a copy of the affidavit of identity filed by Nicholas John Hathaway, who is a candidate for Judge of the Third Circuit Court in Wayne County. Please send all responses, including a copy of Mr. Hathaway's filed affidavit of identity, to this email address. Can my request be honored by the close of business today? Please advise.

Administrative law specialist Adam Fracassi determined that plaintiff's e-mail did not comply with "section 3 of the FOIA," because it did not provide a mailing address. Fracassi concluded that he did not need to respond to the request, but, "because it was one page," Fracassi nevertheless chose to provide plaintiff a redacted copy of Hathaway's affidavit of identity (AOI) a few weeks later. As produced, the AOI disclosed Hathaway's birth year, but redacted his phone number, birth month, and birth date. Fracassi testified at his deposition that various statutes, for example, MCL 168.509gg, prohibited the disclosure of personal information.

The Court of Claims concluded that plaintiff had submitted a defective FOIA request because he had not included his postal address as required by MCL 15.233(1), so defendant had no duty to respond. The court stated that defendant "could have refiled his FOIA application properly and received an unredacted copy but did not do so." The Court of Claims rejected plaintiff's argument that his own noncompliance was a mere technicality that should be overlooked. It therefore granted summary disposition in favor of defendant.

---

[6] Although plaintiff never provided a physical copy of the postcard to the Court of Claims, he did read most of the postcard out loud at his deposition. Plaintiff has also provided a copy of the postcard on appeal. Because its substance was mostly provided below and there is no real dispute about its accuracy, we will exercise our discretion to consider it. MCR 7.216(A)(4).

[7] Very generally, a mandamus action is the proper remedy to compel a public official to comply with a clear legal duty. *Warren City Council v Buffa*, ___ Mich App ___, ___ ; ___ NW2d ___ (2023) (Docket No. 365488); slip op at 12.

## C. SANCTIONS

On May 27, 2021, the Court of Claims entered a scheduling order that, in relevant part, ordered the completion of discovery by May 23, 2022, with dispositive motions to be filed by July 21, 2022. Plaintiff subsequently deposed Brater and Fracassi. On May 6, 2022, defendant served plaintiff with notice of taking his deposition, which was scheduled for 10:00 a.m. on May 23, 2022. Plaintiff informed defendant's counsel that he would not be available in person at that time, and they agreed to conduct plaintiff's deposition by Zoom on the afternoon of May 23. However, plaintiff then informed defendant's counsel that he would not be available at that time and asked to move the deposition to the early morning of May 23. Defendant's counsel refused plaintiff's request to limit the deposition to no more than two hours and, instead, proposed two alternative dates and times. On May 11, 2022, plaintiff advised defendant's counsel that he was unavailable on either date and that he would provide his own alternative dates. By May 19, 2022, plaintiff had not provided any such dates, and, following prompting from defendant's counsel, he offered, in relevant part, May 27, 2022. Defendant's counsel agreed to proceed with the deposition at 10:00 a.m. on May 27.

On May 26, 2022, at 3:30 a.m., a court reporter e-mailed plaintiff a Zoom link for his deposition scheduled for May 27, 2022, at 10:00 a.m. A few hours later, plaintiff responded that he would need to start his deposition at 11:30 a.m. instead "[d]ue to an unexpected emergency." Defendant's counsel apparently accommodated that request. However, at 10:13 a.m. on May 27, plaintiff e-mailed defendant's counsel, saying that he would need to reschedule his deposition because the Court of Appeals had issued two orders in two separate cases ordering him to file briefs by 5:00 p.m. that day. Defendant's counsel e-mailed plaintiff back, refusing to accommodate plaintiff further and explaining that further delay would prejudice defendant's ability to meet the Court of Claims's deadline for dispositive motions. Defendant's counsel warned plaintiff that the deposition would proceed as scheduled and that plaintiff's failure to appear would result in defendant seeking sanctions. Plaintiff e-mailed back, accusing defendant's counsel of unilaterally choosing a date and time when plaintiff was unavailable, asserting that the delay would not prejudice defendant, and offering "to stipulate to extend the discovery deadline for the sole purpose of taking [his] deposition."

Plaintiff did not appear for the deposition. Defendant then filed a motion to compel plaintiff to appear at a deposition, seeking $1,137.50 in sanctions, and seeking to extend the deadlines in the Court of Claims's scheduling order because plaintiff's refusal to participate in discovery had hampered defendant's ability to meet those deadlines. Plaintiff contended in response that defendant's motion was frivolous because he had offered to extend discovery, he had been under strict deadlines from this Court (in other matters), and his cancellation had been timely. Although plaintiff did not file a motion for protective order, he requested in his response to defendant's motion to compel that such an order be entered limiting his deposition to one hour, and he requested that defendant be sanctioned. Plaintiff did not challenge the amount of sanctions requested, nor did he challenge whether defendant had brought her motion under the correct court rule. The Court of Claims granted defendant's motion and denied plaintiff's requests. Plaintiff was subsequently deposed.

## II. STANDARD OF REVIEW

We review de novo a trial court's grant or denial of summary disposition. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). We also review de novo the interpretation and application of statutes, rules, and legal doctrines. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). This Court also reviews de novo "a trial court's determination whether an actual controversy exists." *Kircher v Ypsilanti*, 269 Mich App 224, 227; 712 NW2d 738 (2005).

"This Court reviews a trial court's discovery orders, such as an order to compel, for an abuse of discretion," which "occurs when the trial court chooses an outcome falling outside a range of principled outcomes." *PCS4LESS, LLC v Stockton*, 291 Mich App 672, 676-677; 806 NW2d 353 (2011). This Court also reviews for an abuse of discretion a trial court's imposition of discovery sanctions. *In re Gregory Hall Trust*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket Nos. 361528 and 362467); slip op at 2-3. "A trial court necessarily abuses its discretion when it makes an error of law." *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016).

"The appellant bears the burden of persuasion with respect to prejudice." *In re Knight*, 333 Mich App 681, 687; 963 NW2d 676 (2020). Self-represented litigants are not excused from providing support for their claims, but they are entitled to more generosity and lenity in construing their pleadings than would lawyers. *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976). They are nevertheless otherwise held to the same substantive standards as lawyers. See *Totman v Sch Dist of Royal Oak*, 135 Mich App 121, 126; 352 NW2d 364 (1984). Furthermore, parties who choose to represent themselves must respect "the dignity of the courtroom" and must "comply with relevant rules of procedural and substantive law." *Faretta v California*, 422 US 806, 834 n 46; 95 S Ct 2525; 45 L Ed 2d 562 (1975).

## III. ANALYSIS

### A. ELECTION-LAW CLAIM

Plaintiff argues that the Court of Claims erred by holding that plaintiff had not demonstrated the existence of an actual controversy. Although we agree that an actual controversy has been presented here, we conclude that this issue must be dismissed as moot.

A party has standing to seek a declaratory judgment pursuant to MCR 2.605 if there is "an actual controversy," meaning "a declaratory judgment is needed to guide a party's future conduct in order to preserve that party's legal rights." *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 586; 957 NW2d 731 (2020). Plaintiff argues that there is an "actual controversy" because he, as an elector, needs guidance as to whether it would be legal for him to use the website and whether his vote might be invalidated as a result of using the website. A fair reading of plaintiff's testimony suggests that he actually intended to use the AV ballot application website if assured that doing so would be safe. This elevates his claim, at least on its face, above a pure hypothetical. It is well-settled that the bar for standing is low in election-law cases. *Id*. at 587. Moreover, standing does not depend on the correctness of a plaintiff's concerns or on the merits of a particular case. *1373 Moulin, LLC v Wolf*, ___ Mich App ___, ___; ___ NW2d ___

(2022) (Docket No. 360569); slip op at 4. In light of these principles and the lenity to which self-represented litigants are necessarily entitled, see *Estelle*, 429 US at 106-108, we conclude that plaintiff has demonstrated the existence of an actual controversy.

Even so, courts typically "will not entertain moot issues or decide moot cases." *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (quotation marks and citation omitted). A claim is moot when "an event has occurred that renders it impossible for the court to grant relief." *Barrow v Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014) (quotation marks and citation omitted). A claim may also be considered moot "when a judgment, if entered, cannot have any practical legal effect on the existing controversy." *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 163 n 8; 871 NW2d 530 (2015).

Plaintiff's claim is moot because the 2022 amendments to the Michigan Constitution charge the Secretary of State, the chief elections officer of our state, to develop and maintain a state-funded system to track submitted absent voter ballot applications and absent voter ballots. The rules promulgated by the SOS to implement the AV Ballot application are consistent with the Secretary of State's constitutional obligations.

On November 8, 2022, before a claim of appeal was filed in this Court, Michigan voters approved passage of Proposition 22-2, which, among other things, amended the Michigan Constitution, Const 1963, art 2, § 4. Building on amendments to this section in 2018[8], the 2022 amendments cemented broad voting rights protections to Michigan voters:

> Every citizen of the United States who is an elector qualified to vote in Michigan shall have. . .[t]he fundamental right to vote. . . . No person shall: (1) enact or use any law, rule, regulation, qualification, prerequisite, standard, practice, or procedure; (2) engage in any harassing, threatening, or intimidating conduct; or (3) use any means whatsoever, any of which has the intent or effect of denying, abridging, interfering with, or unreasonably burdening the fundamental right to vote. [Const 1963, art 2, § 4(1)(a).]

Additionally, voters have:

> (i) The right to: (1) state-funded prepaid postage to return an absent voter ballot application provided to them by a Michigan election official; (2) state-funded prepaid postage to return a voted absent voter ballot; and (3) *a state-funded system to track submitted absent voter ballot applications and absent voter ballots*. The *system shall permit voters to elect to receive electronic notifications regarding the status of the voter's submitted absent voter ballot application and absent voter ballot,* inform voters of any deficiency with the voter's submitted absent voter ballot

---

[8] "In the November 2018 election, Michigan voters approved passage of Proposition No. 18-3 (Proposal 3), which, among other things, amended the Michigan Constitution, Const. 1963, art. 2, § 4, to provide all registered voters the right to vote by absentee ballot without giving a reason." *Davis v Secy of State*, 333 Mich App 588, 591; 963 NW2d 653 (2020).

application or absent voter ballot, and provide instructions for addressing any such deficiency. [Const Art. 2, § 4(1)(i). (Emphasis added.)]

The Constitution further instructs that "[a]ll rights set forth in [§ 4(1)] shall be self-executing. This subsection shall be liberally construed in favor of voters' rights in order to effectuate its purposes."

Const Art. 2, § 4(1) directs the Legislature to "enact laws to regulate the … manner of …elections, preserve the purity of elections, … and to provide for a system … of absentee voting." The Legislature followed that directive by granting the Secretary of State supervisory power over local election officials under MCL 168.21 and by granting the Secretary of State the powers specified by MCL 168.31. "As a single executive heading a principal department, the Secretary of State shall 'perform duties prescribed by law.' " *Davis v Secy of State*, 333 Mich App 588, 597; 963 NW2d 653 (2020) (citing Const. 1963, art. 5, § 9). "Under the Michigan Election Law, MCL 168.1 et seq., and specifically MCL 168.21, the Secretary of State is the chief elections officer of the state and has supervisory authority over local election officials performing their duties." *Id.* MCL 168.31(1) requires the Secretary of State to:

(a) Subject to subsection (2), issue instructions and promulgate rules pursuant to the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328, for the conduct of elections and registrations in accordance with the laws of this state.

(b) Advise and direct local election officials as to the proper methods of conducting elections.

\* \* \*

Based on this plenary authority (albeit before the 2022 Constitutional amendments were enacted), the Secretary of State established an AV ballot application website. Plaintiff argues that the AV ballot application process violates MCL 168.759(1) and seeks a declaratory judgment to that effect. The crux of plaintiff's argument is that the AV ballot website is illegal because it has created a process for applying for an absentee ballot that is not expressly authorized by MCL 168.759. The statute, which sets forth the criteria for AV ballot applications, states that an elector must apply for an AV ballot either "in person or by mail with the clerk of the township or city in which the elector is registered." MCL 168.759(1). It is silent as to whether voters may apply for an absentee ballot online. Effective December 19, 2022, the Michigan Bureau of Elections promulgated rules authorizing the use of the AV ballot website and giving instructions for processing applications submitted online. See Mich Admin Code, R 168.31 through R 168.35.

Agencies may generally promulgate rules to fill "gaps" in otherwise applicable legislation. *Dep't of Labor and Economic Growth, Unemployment Ins Agency v Dykstra*, 283 Mich App 212, 224; 771 NW2d 423 (2009). "A rule adopted by an agency in accordance with the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, is considered a 'legislative rule' and has the force and effect of law." *Brightmoore Gardens, LLC v Marijuana Regulatory Agency*, 337 Mich App 149, 161; 975 NW2d 52 (2021). "As the chief elections officer, with constitutional authority to 'perform duties prescribed by law,' the Secretary of State had the inherent authority to take measures to ensure that voters were able to avail themselves of the constitutional rights established by [Constitutional Amendment] regarding absentee voting." *Davis*, 333 Mich App at 601.

Here, the rules promulgated by the Bureau of Elections about the AV ballot website fill a "gap" in MCL 168.759 by specifying that electors may lawfully apply for an AV ballot online.[9] The rules also implement the self-executing Constitutional mandate that the State establish "a state-funded system to track submitted absent voter ballot applications and absent voter ballots" and ensure that the system "permit voters to elect to receive electronic notifications regarding the status of the voter's submitted absent voter ballot application and absent voter ballot, inform voters of any deficiency with the voter's submitted absent voter ballot application or absent voter ballot, and provide instructions for addressing any such deficiency." Const 1963, Art 2, § 4(i).

Agency rules "need not be mere reiterations of a statute[.]" *Chrisdiana v Dep't of Community Health*, 278 Mich App 685, 689; 754 NW2d 533 (2008). Instead, the "rules must be within the matter covered by the enabling statute, they must comply with the underlying legislative intent, and they must not be arbitrary and capricious." *Id*. (quotation marks and citation omitted). A rule is generally not considered arbitrary or capricious "if it is rationally related to the purpose of the statute." *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 125; 807 NW2d 866 (2011). The rules at issue here clearly cover the same subject matter as MCL 168.759, since they address AV ballot applications. They are also consistent with the legislative intent behind MCL 168.759, which was enacted to give practical effect to the right to vote absentee, as guaranteed by Const 1963, art 2, § 4. *Davis*, 333 Mich App at 603-604. Finally, nothing about the rules appears arbitrary or capricious. The rules at issue here are rationally related to furthering the Legislature's intent to ensure that electors may vote absentee by making it easier to exercise that right through the use of modern technology. For all of these reasons, we conclude that the rules promulgated by defendant on the subject conform to and supplement MCL 168.759.

We reject Plaintiff's invitation to narrowly read MCL 168.759(1) as only allowing a voter to apply for an AV Ballot in person or by mail. We recognize that "[c]ourts should generally give the word 'shall' a mandatory meaning and the word 'may' a permissive meaning, unless to do so would clearly frustrate legislative intent as evidenced by other statutory language or by reading the statute as a whole." *Comm to Ban Fracking in Michigan v Bd of State Canvassers*, 335 Mich App 384, 396; 966 NW2d 742 (2021)(cleaned up). Here, reading MCL 168.759(1) restrictively would frustrate not just legislative intent, but the will of the People. "As explained by our Supreme Court in *Elliott v Secretary of State*, 295 Mich 245, 249; 294 NW 171 (1940), '[E]verything reasonably necessary to be done by election officials to accomplish the purpose of' a constitutional provision 'is fairly within its purview.' " *Davis*, 333 Mich App at 601 (citing to *Elliot*).

This is not the first time that Plaintiff has challenged the Secretary of State's authority to act under MCL 168.759. In *Davis*, Plaintiff raised an analogous argument challenging the Secretary of State's authority to mail absentee ballot applications to registered voters. This Court resoundingly rejected Plaintiff's argument:

> We conclude that the Secretary of State's action in mailing an application that each registered voter was free to fill out and return, or not, fell within her authority as

---

[9] Effective March 21, 2024, the Legislature has amended MCL 168.759 to include language expressly authorizing the use of the absentee ballot application website.

chief elections officer of the state and comported with her constitutional obligation to liberally construe Const. 1963, art. 2, § 4(1) to effectuate its purposes. See *Elliott*, 295 Mich. at 250, 294 N.W. 171 (noting that "it is the clear duty of election officials, when reasonably possible, to prepare ballots in such a manner as will most effectively comply with the constitutional mandate" at issue). While MCL 168.31(1)(e) is not applicable because the Secretary did not "[p]rescribe" to local election officials any particular "uniform forms, notices, and supplies the secretary of state considers advisable for use in the conduct of elections," that section, together with the Secretary of State's role as chief elections officer, evidences that the Legislature granted the Secretary a broad measure of discretion in conducting and supervising elections. Such discretion certainly includes providing voters information and absent-voter ballot applications that substantially comply with the form prescribed by the Legislature in MCL 168.759(5). [*Davis*, 333 Mich App 602–03.]

Likewise, we hold that the Secretary of State has authority to promulgate rules to operate the AV Ballot Application website under Const 1963, art 2, § 4(1), and MCL 168.759(1) does not limit that authority.

Defendant's election-law claim must be dismissed as moot.

## B.  FOIA CLAIM

Plaintiff next argues that the Court of Claims erred by granting defendant summary disposition on plaintiff's FOIA claim.  We disagree.

Plaintiff's claim involves the interpretation of statutory language.  "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written." *Honigman Miller Schwartz and Cohn LLP v Detroit*, 505 Mich 284, 294; 952 NW2d 358 (2020) (quotation marks and citation omitted).  Statutory provisions must be read in the context of the entire statute to produce a harmonious whole. *C G Automation & Fixture, Inc v Autoform, Inc*, 291 Mich App 333, 338; 804 NW2d 781 (2011). "This Court must consider the object of the statute and the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose." *Adams Outdoor Advertising, Inc v Canton Twp*, 269 Mich App 365, 371; 711 NW2d 391 (2006) (citation omitted). "The term 'must' indicates that something is mandatory." *Vyletel-Rivard v Rivard*, 286 Mich App 13, 25; 777 NW2d 722 (2009).

According to these principles, "this Court must construe the FOIA as a whole, harmonizing its provisions." *Arabo v Mich Gaming Control Bd*, 310 Mich App 370, 386; 872 NW2d 223 (2015) (quotation marks and citation omitted).  Plaintiff correctly observes that in the FOIA context, " '[w]ritten request' means a writing that asks for information, and includes a writing transmitted by facsimile, electronic mail, or other electronic means."  MCL 15.232(m).  However, MCL 15.233(1) further provides:

> Except as expressly provided in [MCL 15.243, addressing exemptions from disclosure], upon providing a public body's FOIA coordinator with a written request that describes a public record sufficiently to enable the public body to find the public record, a person has a right to inspect, copy, or receive copies of the requested public record of the public body. A request from a person, other than an individual who qualifies as indigent under section 4(2)(a), must include the requesting person's complete name, *address*, and contact information, and, if the request is made by a person other than an individual, the complete name, address, and contact information of the person's agent who is an individual. *An address must be written in compliance with United States Postal Service addressing standards*. Contact information must include a valid telephone number or electronic mail address. A person has a right to subscribe to future issuances of public records that are created, issued, or disseminated on a regular basis. A subscription is valid for up to 6 months, at the request of the subscriber, and is renewable. An employee of a public body who receives a request for a public record shall promptly forward that request to the freedom of information act coordinator. [Emphasis added.]

Notably, the plain language of MCL 15.233(1) indicates that "an address" is something distinct from "contact information," because the statute imposes different requirements for each in separate sentences. The plain language of these provisions affords only one reasonable construction: although a "written request" generally refers to a writing that could be in the form of an e-mail, the right to access a public record is conditioned on submitting a request that complies with a few simple requirements, one of which is the inclusion of a postal mailing address. *Honigman Miller Schwartz and Cohn LLP*, 505 Mich at 294.

Plaintiff argues that defendant was obligated to respond to his request within five business days under MCL 15.235(2), which generally provides that the public body must "respond to a request for a public record within 5 business days after the public body receives the request." However, that statutory section does not address what is, or must be contained within, a "written request." In MCL 15.235(1), the statutory section describes when a request is deemed to be "received" and to whom a request should be directed. MCL 15.235(1) also states "Except as provided in [MCL 15.233]," but, from context, it appears that the quoted language provides an exception to whether the written request must be made to the public body's FOIA coordinator. Nothing in MCL 15.235 appears to articulate what constitutes a request.

Taken as a whole, MCL 15.232(m) defines a written request, MCL 15.233(1) specifies what must be included in the written request. MCL 15.235(2) provides a deadline for a public body to respond to a proper request following its receipt of that request. *Arabo*, 310 Mich App at 386. Plaintiff's FOIA request plainly violated the content requirements of MCL 15.233(1), so the Court of Claims correctly found the request to be defective. Nothing in the statute specifies what, if any, obligation a public body has to respond to a defective FOIA request, nor have we been able to find any caselaw on point. However, courts may not dispense with a requirement set forth in the plain language of a statute, because doing so would impermissibly render a portion of the statute nugatory. *Andrie Inc v Treasury Dep't*, 496 Mich 161, 172; 853 NW2d 310 (2014). If a statute provides a mandatory provision, it must be complied with, and the courts may not

-11-

speculate whether the Legislature really intended something other than what it wrote. *In re Forfeiture of Bail Bond*, 496 Mich 320, 336; 852 NW2d 747 (2014). Plaintiff's proposed construction of the FOIA as requiring a prompt response to even defective requests would render the content requirements set forth in MCL 15.233(1) nugatory and meaningless, and we decline to adopt it.

The Court of Claims did not err by granting defendant summary disposition on this claim.

## C. SANCTIONS

Finally, plaintiff argues that the Court of Claims erred by subjecting him to discovery sanctions. We disagree.

As an initial matter, we note that several of plaintiff's arguments have been waived. Plaintiff argued in the Court of Claims that defendant's motion to compel and for sanctions was frivolous because he had offered to extend discovery, he had been under strict deadlines from this Court, and his cancellation had been timely. Plaintiff also argued that the Court of Claims should impose limitations on his deposition under MCR 2.313(A)(3). Those arguments are therefore preserved. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020). However, plaintiff never challenged the amount of sanctions that defendant sought. Further, he did not argue that defendant moved to compel and for sanctions—or that the Court of Claims granted the motion—under an incorrect court rule. Those arguments are therefore waived. *Tolas Oil & Gas Exploration Co v Bach Svcs & Manufacturing, LLC*, ___ Mich App ___, ___; ___ NW2d___ (2023) (Docket No. 359090); slip op at 2-5.

"Pursuant to MCR 2.313(A), a party may move for an order compelling discovery." *KBD & Assoc, Inc v Great Lakes Foam Technologies, Inc*, 295 Mich App 666, 677; 816 NW2d 464 (2012). In relevant part, MCR 2.313(A)(2)(*b*)(v) provides that if a party "fails to appear before the person who is to take his or her deposition, after being served with a proper notice, the party seeking discovery may move for an order compelling compliance." The plain language of the rule is clear and unambiguous, so it must be enforced as written. *Velocity MRS Fund IV v Nextgen Pain Assocs & Rehab*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 358712); slip op at 2-3. Michigan's public policy favors broad and open discovery of any matter that is relevant and not privileged. *Arabo*, 310 Mich App at 398. That policy nevertheless has limits, so a party may seek a protective order under MCR 2.302(C) if the party can demonstrate good cause. *Id*. "Good cause" refers to a reason that is satisfactory, sound, or valid, and a "trial court has broad discretion to determine what constitutes 'good cause.' " *Thomas M Cooley Law School v Doe 1*, 300 Mich App 245, 264; 833 NW2d 331 (2013). Otherwise, a trial court "abuses its discretion when it denies discovery of relevant information." *Harrison v Olde Financial Corp*, 225 Mich App 601, 614; 572 NW2d 679 (1997).

In this case, plaintiff informally requested a protective order limiting his deposition to a single hour and limiting any questioning to the two claims that were then remaining in the case. However, plaintiff never filed a motion for protective order, never articulated a satisfactory, sound, or valid reason for a one-hour restriction, and never provided any evidence that defendant would inappropriately expand the scope of the deposition to matters not relevant to the case at hand. In light of the broad scope of Michigan's discovery policy and plaintiff's failure to substantiate his

claimed "good cause," the Court of Claims did not abuse its discretion by denying plaintiff's request for a protective order. *Harrison*, 225 Mich App at 614.

Plaintiff also argues that defendant's motion to compel was unnecessary to secure his attendance at a deposition. Plaintiff offers two reasons for this contention: first, that he had a legitimate excuse for his last-moment cancellation of his scheduled deposition, which had already been rescheduled several times at his insistence, and second, that he had offered to stipulate to extend discovery. Both arguments are meritless. The record shows that plaintiff offered to stipulate to extend the discovery deadline for the sole purpose of taking his deposition. Plaintiff's offer, however, did not consider defendant's concerns about being able to meet the deadline for filing dispositive motions. Plaintiff apparently held the subjective belief that defendant's concerns were unwarranted, so plaintiff's offer was presumably not made in bad faith. Nevertheless, plaintiff's offer still failed to address defendant's valid concerns about complying with the scheduling order.

Further, plaintiff's claimed legitimate excuse for missing his deposition was that this Court had ordered plaintiff to submit briefing in two of plaintiff's appeals by the end of that day. This excuse is entirely a problem of plaintiff's own making. This Court may take judicial notice of its own records. *Precise MRI of Mich, LLC v State Auto Ins Co*, 340 Mich App 269, 281 n 5; 985 NW2d 892 (2022). In both of the appeals to which plaintiff refers, plaintiff filed his claims of appeal in the morning hours of May 25, 2022, and in each case, he simultaneously filed emergency motions to expedite the appeals and for immediate consideration. On May 26 and 27, 2022, respectively, this Court granted plaintiff's motions. *Davis v Highland Park City Clerk*, unpublished order of the Court of Appeals, entered May 26, 2022 (Docket No. 361544); *Davis v Wayne Co Election Comm*, unpublished order of the Court of Appeals, entered May 27, 2022 (Docket No. 361546). In each order granting plaintiff's motions, this Court ordered that plaintiff's brief was due by 5:00 p.m. on May 27, 2022. *Id*. It appears that this Court e-mailed the order in Docket No. 361544 to plaintiff at 4:41 p.m. on May 26, 2022, and it e-mailed the order in Docket No. 361546 to plaintiff at 9:53 a.m. on May 27, 2022. Therefore, plaintiff is correct in the very limited sense that this Court issued orders to him shortly before the scheduled deposition, and that those orders imposed a tight deadline. However, plaintiff's description of the situation as an "unexpected emergency," under these circumstances, is neither reasonable nor a legitimate excuse.

Plaintiff cannot have been surprised that this Court granted his motions, because plaintiff received precisely what he sought. Moreover, in plaintiff's motion to expedite in Docket No. 361544, he represented that he "will be filing his brief on appeal by 10 a.m. on Friday, May 27, 2022," (punctuation omitted) and in his motion to expedite in Docket No. 361546, he represented that he "will be filing his brief on appeal by 1 p.m. on Friday, May 27, 2022" (punctuation omitted). Plaintiff's filings therefore indicated that he was already prepared to comply with this Court's orders if his motions were granted. Furthermore, plaintiff characterized his motions in both appeals as emergencies, so to the extent there was an emergency, that emergency was already present at least two full days before plaintiff's scheduled deposition. In short, any emergency was preexisting, this Court's orders and their tight deadlines should have been fully expected, and plaintiff should have been prepared for the possibility of this Court giving him that for which he had asked. There was no "unexpected emergency" not of plaintiff's own making.

In any event, plaintiff is entitled to relatively minimal substantive lenity as a self-represented litigant. See *McNeil v US*, 508 US 106, 113; 113 S Ct 1980; 124 L Ed 2d 21 (1993), and *Faretta*, 422 US at 834 n 46; see also *McKinnie v Roadway Express, Inc*, 341 F3d 554, 558 (CA 6, 2003) ("Ordinary civil litigants proceeding in pro se, however, are not entitled to special treatment, including assistance in regards to responding to depositive [sic] motions."). The fact that plaintiff overcommitted himself is not an excuse for him any more than it would be for an attorney. See, e.g., *Daugherty v State*, 133 Mich App 593, 598; 350 NW2d 291 (1984). As a self-represented litigant, plaintiff did not have a traditional "client" to whom he owed an ethical duty of competence and diligence. Nevertheless, the fact that plaintiff overcommitted himself and was incapable of handling his own voluntarily assumed workload does not excuse his ensuing inability to meet deadlines any more than it would excuse a practicing attorney's inability to meet deadlines.

Finally, the plain language of MCR 2.313(A)(2)(*b*)(v) clearly establishes that if a party fails to appear at a properly noticed deposition, the party seeking discovery is permitted to seek an order to compel. Although plaintiff contends that his cancellation was timely, he sought to cancel his deposition only a little more than an hour before its final rescheduled time. This was after defendant had already accommodated numerous rescheduling requests, including a rescheduling request plaintiff had made the previous day. Plaintiff points to no court rule stating that a deponent may unilaterally demand cancellation of a properly noticed deposition. Plaintiff complains that defendant unilaterally chose a time for the deposition, but he fails to explain how that was improper or unusual, especially in light of defendant's repeated accommodations of plaintiff's rescheduling requests. The court rules plainly establish that defendant was within her rights to move to compel, and the Court of Claims did not abuse its discretion by granting the motion. Because plaintiff waived his remaining challenges to the grant of sanctions by failing to raise them below, we will not consider them.

## IV. CONCLUSION

For the reasons stated, we affirm the order granting summary disposition to defendant on plaintiff's FOIA claim, and dismiss the election-law claim as moot. Furthermore, we affirm the order granting defendant's motion to compel and imposing discovery sanctions on plaintiff. Because this appeal involves matters of significant public interest, the parties shall bear their own costs on appeal. MCR 7.219(A).

/s/ Sima G. Patel
/s/ Michelle M. Rick

-14-